[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 21, 2011
JOHN LEY
CLERK

No. 10-13627
Non-Argument Calendar
_____

D.C. Docket No. 3:09-cv-00022-CLS

PATSY PAYTON,

Plaintiff - Appellant,

JERRY PAYTON,

Plaintiff,

versus

CITY OF FLORENCE, ALABAMA,
RICKY MCCRELESS,
DREW HARLESS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 21, 2011)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff Patsy Payton appeals the district court's order granting summary judgment to the defendants Ricky McCreless, Drew Harless, and the City of Florence, Alabama on Payton's 42 U.S.C. § 1983 unlawful search and excessive force claims. After review, we affirm in part and reverse in part.[1]

## I. BACKGROUND

This action arose out of a January 8, 2007 attempt by Florence Police Department ("FPD") officers McCreless and Harless to execute an arrest warrant for plaintiff Payton's adult son Philip Payton ("Philip") at Payton's home.

### A. Arrest Warrant and Philip's Contact Information

On April 7, 2006, FPD officers arrested Philip for felony DUI, driving with a suspended license, and possession of marijuana and drug paraphernalia. Philip executed two appearance bonds on which he indicated his address was 1618 Northern Boulevard. Plaintiff Payton and her husband Jerry Payton (Philip's father) live at 1618 Northern Boulevard.

Philip had no personal contact with the FPD between April 7, 2006 and January 8, 2007. However, on September 25, 2006, Philip's estranged wife Kandy

---

[1]We review de novo a district court's grant of summary judgment based on qualified immunity, viewing all evidence and making reasonable inferences in a light most favorable to the non-moving party. Oliver v. Fiorino, 586 F.3d 898, 901 (11th Cir. 2009). While many of the facts are hotly disputed and may not be proved at trial, we must consider, at the summary judgment stage, the version of the facts most favorable to Payton.

Payton ("Kandy") called the FPD to make a complaint against Philip for allegedly destroying her furniture and threatening her and her friends. Kandy told police Philip was living at 409 County Road 9, the home of a former girlfriend of Philip's. FPD officers entered this information into an internal FPD database known as the "Spillman database." There is no evidence Philip was ever arrested or charged based on Kandy's complaint.

As of December 2006, Philip had two entries in the Spillman database based on different spellings of his first name – i.e., "Philip" and "Phillip." The "Phillip" entry listed Philip's address as 1618 Northern Boulevard. The "Philip" entry listed Philip's address as 409 County Road 9 but also listed 1618 Northern Boulevard, albeit as a former address that expired on April 30, 2001 and as the address of Philip's emergency contact (his father). Both the "Philip" and "Phillip" entries cross-referenced the other.

On December 5, 2006, a grand jury indicted Philip on the April 2006 felony DUI charge. An arrest warrant issued that same day. The arrest warrant listed Philip's address as 1618 Northern Boulevard.

On January 8, 2007, defendant police officers McCreless and Harless participated in a "round-up" conducted by the Lauderdale County Drug Task Force ("DTF"), for which Florence police officers executed a number of

3

outstanding arrest warrants. DTF personnel prepared an information packet for each arrest warrant, enclosing background information on the person to be arrested. The information packet for Philip's arrest warrant included (1) a copy of the arrest warrant, (2) printouts of the "Philip" and "Phillip" entries from the FPD's Spillman database, and (3) a printout of information on Philip obtained from the Law Enforcement Tactical System ("LETS") database maintained by the Alabama Criminal Justice Information Center. The LETS data on Philip derived from Philip's driver's license information. The LETS printout on Philip was dated December 19, 2006, included Philip's driver's license photograph, and listed his address as 1618 Northern Boulevard.

**B.    Attempted Execution of Arrest Warrant**

On the morning of January 8, 2007, Officers McCreless and Harless tried to execute Philip's arrest warrant. Officer Harless reviewed the information in the warrant packet while Officer McCreless drove. The officers concluded from the information packet they had with Philip's arrest warrant that Philip lived at 1618 Northern Boulevard.

Officers McCreless and Harless arrived at plaintiff Payton's home at 1618 Northern Boulevard around 7:45 a.m. Upon hearing the doorbell, Payton opened the side door to her house, which opened onto the carport. Officer McCreless

asked Payton if Philip lived there. Payton said Philip did not live there. Payton also said Philip was out of town.

Officer McCreless asked plaintiff Payton, "Who are you to [Philip]?" and Payton told him she was Philip's mother. Officer McCreless waved a piece of paper at Payton and said it was an arrest warrant for Philip. Payton asked if she could see the warrant. Payton did not recall Officer McCreless's response, but he did not show it to her.

The officers asked to go inside the house to look for Philip. Plaintiff Payton said, "No. This is my house." According to her version of events, plaintiff Payton did not yell at the officers, was not belligerent, and made no aggressive movement toward the officers. Payton at most may have raised her voice a little.

At that point, according to plaintiff Payton, Officer Harless grabbed Payton, who was standing in the doorway to her house, by her upper right arm and pulled her out of the doorway. Plaintiff Payton did not resist. Officer Harless directed Payton toward Officer McCreless and then went into the house. Officer McCreless grabbed plaintiff Payton's left thumb and pulled it up behind her back past her shoulder blade. Using this hold, Officer McCreless pushed Payton against the hood of her pickup truck, which was parked in the carport. Officer McCreless held Payton's head down on the truck. Her head was turned to face

5

back toward the house. Payton said, "You're hurting me," and Officer McCreless twisted her thumb even more.[2]

The door to the house had not completely shut after Officer Harless entered the house, and plaintiff Payton's dog came out the open door. Payton told Officer McCreless she needed to get the dog because he had never been off a leash. Officer McCreless released her to get the dog. Officer McCreless went into the house. Payton picked up her dog and followed Officer McCreless into the house.

Inside, plaintiff Payton called out to her husband Jerry, who awoke and spoke with the officers. Officer Harless told Jerry they were looking for Philip. Jerry objected to the officers being inside his home. Both officers said they had an arrest warrant for Philip. Officer McCreless told Jerry that Philip "gave your

---

[2]Although for purposes of this appeal we accept Payton's version of the facts as true, we note that the officers' version of events differs in many respects. According to the officers, Officer Harless met Payton at the door and told her why they were there. Payton was "extremely belligerent." After telling the officers that Philip was not there and that he was out of town, Payton insisted the officers were not coming into her house. Officer Harless tried twice to explain the arrest warrant but Payton would not look at it or listen to him. Payton was yelling at the officers. After about a minute, Officer Harless decided to step past Payton into the house because he did not know what was going on in the house and feared Payton "was either trying to hide the fact that Philip was inside . . . and/or attempting to stall so as to give Philip time to escape or arm himself." Officer Harless did not grab or pull Payton, and if he touched her at all it was just brushing against her as he stepped past. As Officer Harless stepped past Payton, Payton turned and lunged at Officer Harless, throwing out her arms to grab him from behind. At that point, Officer McCreless grabbed Payton's arm and pulled it behind her back, pulled Payton away from Officer Harless, spun her around, and secured her against the truck. Officer McCreless restrained Payton for less than ten seconds.

address." Officer McCreless said he and Officer Harless had a right to search the house.

Officer Harless briefly searched the house for Philip while Officer McCreless spoke with the Paytons. Officer Harless looked into the bedrooms and other rooms and did not see Philip. The officers then left.

Plaintiff Payton, who was 60 years old on January 8, 2007, developed bruises on her right arm where Officer Harless grabbed her, and she had pain in her left wrist and hand from Officer McCreless's pulling her thumb up behind her back. Payton saw a doctor two days later. The doctor noted that Payton's left wrist and hand were stiff and painful but neurologically intact, and diagnosed tendonitis of the wrist and a possible incomplete fracture of a bone in Payton's wrist. Payton's doctor opined that Payton's having her arm twisted up behind her back "could lead to the injury that she had that produced the symptoms that she had."

Plaintiff Payton obtained regular medical treatment until November 2007, when she had outpatient surgery to relieve pain in her left wrist. Payton's doctor reported the surgical procedure was successful and free of complications. Payton reports that she still has pain and a limited range of motion in her left hand.

C.     **Procedural History**

7

On January 7, 2009, plaintiff Payton brought this lawsuit against Officers Harless and McCreless and the City of Florence. Payton's complaint asserted unlawful search and excessive force claims under § 1983, as well as state law claims for trespass and assault and battery.

The defendants moved for summary judgment based on qualified immunity. The district court granted the motion, concluding that: (1) the officers were entitled to qualified immunity from Payton's unlawful search claim because they reasonably believed Philip lived at 1618 Northern Boulevard and was present in the home and they did not violate clearly established law; and (2) the officers were entitled to qualified immunity from Payton's excessive force claim because Officer McCreless's use of force against Payton was reasonable and the amount of force was <u>de minimis</u>.[3] The district court declined to exercise supplemental jurisdiction over Payton's state law claims and dismissed them without prejudice. Payton appealed.

## II. DISCUSSION

### A. Qualified Immunity

---

[3]Payton consented to the entry of summary judgment as to her § 1983 claims against the City of Florence.

The defense of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citation omitted). A government official claiming qualified immunity must first establish that he was acting within his discretionary authority. Cottone v. Jenne, 326 F.3d 1352, 1357-58 (11th Cir. 2003). Here, the parties agree the defendant officers were acting within their discretionary authority. Thus, Payton bears the burden of showing that qualified immunity is inappropriate. Id. at 1358.

This Court uses a two-part test to evaluate claims of qualified immunity. Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010). The Court considers (1) "whether the plaintiff's allegations, if true, establish a constitutional violation," and (2) "whether the right violated was 'clearly established.'" Id. The Court may analyze the two prongs "in whatever order is deemed most appropriate for the case." Rehberg v. Paulk, 611 F.3d 828, 839 (11th Cir. 2010), petition for cert. filed, No. 10-788 (U.S. Dec. 13, 2010). The defendant officers are entitled to qualified immunity unless the plaintiff establishes both prongs of the test. Keating

v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010), petition for cert. dismissed sub nom. Timoney v. Keating, 131 S. Ct. 501 (Oct. 15, 2010).

**B.    Unlawful Search Claim**

Payton claims Officers McCreless and Harless unlawfully entered and searched her home.  "Although searches and seizures inside a home without a search warrant are presumptively unreasonable, in Payton v. New York, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388, 63 L. Ed. 2d 639 (1980), the Supreme Court held that 'for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" United States v. Bervaldi, 226 F.3d 1256, 1262-63 (11th Cir. 2000).  Thus, in-home searches pursuant to an arrest warrant are lawful so long as "the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, . . . warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry."  United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995).

The fact that the subject of an arrest warrant "may live somewhere else from time to time does not categorically prevent a dwelling from being the suspect's residence."  United States v. Bennett, 555 F.3d 962, 965 (11th Cir.), cert. denied,

130 S. Ct. 64 (2009). But the officers' belief that the searched home is the suspect's residence must be reasonable at the time of entry into the home, and if the officers' belief is based on old information, the question arises whether the passage of time and acquisition of additional information eroded the reasonableness of the officers' belief by the time of the search. Bervaldi, 226 F.3d at 1264. In Bervaldi, this Court concluded that police officers reasonably relied on information concerning a suspect's residence that was gathered nearly seven months before they tried to execute the arrest warrant, noting that "[r]esidency in a house . . . generally is not transitory or ephemeral, but instead endures for some length of time." Id. at 1265-66.

As to police officers' "on the spot determination" of whether the suspect is within the home at the time, "court must be sensitive to common sense factors indicating a resident's presence." Id. at 1263. For example, "officers may presume that a person is at home at certain times of the day – a presumption which can be rebutted by contrary evidence regarding the suspect's known schedule." Id. at 1267 (quotation marks omitted).

Here, we conclude that the officers' search of Payton's home did not violate the Fourth Amendment. Under the circumstances, the officers had a reasonable basis for believing Philip lived at Payton's house. Three of the four documents in

the information packet for Philip's arrest warrant (the warrant itself, the printout of the "Phillip" entry in the FPD's Spillman database, and the LETS database printout) listed Philip's address as 1618 Northern Boulevard. Only the "Philip" Spillman database entry listed a different address. Notably, each document whose information came from Philip himself – including Philip's driver's license and the appearance bond he issued upon his arrest for the charge the warrant covered – listed the Northern Boulevard address.

Payton argues the officers had no reasonable basis for believing Philip lived at Payton's house because one of the documents in the information packet (the "Philip" Spillman entry) listed a different home address (the County Road 9 address), and that different address was more recent than the Northern Boulevard address. However, there is no evidence that Officer McCreless or Officer Harless knew when the FPD obtained the County Road 9 address. In addition, the 1618 Northern Boulevard address is not one totally unconnected to Philip – it was still his parents' home. Payton also argues the nine-month time lag between Philip's arrest (at which time he provided the Northern Boulevard address on the warrant) and the officers' search of Payton's home eroded the reasonableness of the address information. We disagree. Under the circumstances, plaintiff Payton has not

shown that the defendant officers' belief that Philip lived at 1618 Northern Boulevard was unreasonable.[4]

Under the facts of this case, the defendant officers also had reason to believe Philip was inside. First, it was reasonable to conclude that if Philip lived in the house, he would likely be inside at 7:45 a.m. And second, when the officers questioned plaintiff Payton at the home, she immediately told them both that Philip did not live there and that he was out of town. The incongruity of these two statements, combined with the fact that plaintiff Payton was Philip's mother, provided a reasonable basis for believing Philip was present in the house.

Therefore, we conclude that plaintiff Payton has not shown that the defendant police officers' entry into Payton's home to look for Philip violated her Fourth Amendment rights. We need not reach the "clearly established" prong of the qualified immunity analysis. We turn to plaintiff Payton's excessive force claim, where the result is different.

## C.   Excessive Force Claim

---

[4]We also reject Payton's contentions that the officers' belief was rendered unreasonable by the fact that arrest warrants sometimes have incorrect addresses and that Philip was 37 years old and the home at 1618 Northern Boulevard belonged to his parents. The officers relied not only on the warrant but on the other supporting information. Moreover, it was not unreasonable to conclude that a 37-year-old man who said he lived at his parents' house in fact did so.

13

Claims of excessive force under the Fourth Amendment are governed by a standard of objective reasonableness: "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (quotation marks omitted). "[I]n order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. at 1197-98 (quoting Graham v. Conner, 409 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989)). The amount of force used by a police officer "must be reasonably proportionate to the need for that force." Id. at 1198.

Here, under plaintiff Payton's version of the facts, the amount of force employed by Officer McCreless was patently excessive. Payton was not being arrested. Under her version, Payton was not being belligerent and made no aggressive movement toward the officers. Nevertheless, after Officer Harless had already pulled Payton out of the doorway, Officer McCreless grabbed her thumb and pulled it up behind her back past her shoulder blade, twisting even harder after she complained he was hurting her. Payton has presented at least some medical

evidence from which a jury could infer that the amount of force was sufficiently severe that Payton required surgery months later to relieve the pain.[5] Under the particular factual circumstances here, this amount of force cannot reasonably be considered <u>de minimis</u>.[6] Thus, at the summary judgment stage, and under her version of the facts, plaintiff Payton has presented sufficient evidence that Officer McCreless's use of force against Payton violated Payton's Fourth Amendment rights.

We also find that on January 8, 2007, the law was clearly established that Officer McCreless's conduct, as Payton describes it, violated her constitutional right to be free from excessive force. No objectively reasonable police officer could believe that, consistent with the dictates of the Constitution, he could grab a 60-year-old woman – who was suspected of no crime, who verbally objected to a search of her home in a non-belligerent manner and made no aggressive

---

[5]Defendants do not contest on appeal that Payton's doctor's testimony established the requisite causal link between Officer McCreless's use of force and Payton's injury and eventual surgery.

[6]Nor was Officer McCreless's use of force against Payton justified, as the district court found, by Officer McCreless's belief that Payton was trying to grab Officer Harless from behind as Officer Harless pushed past her. This reading of the facts is inconsistent with Payton's testimony, which we must accept as true for purposes of this appeal. Not only did Payton testify that she made no aggressive movements, but Payton also testified that Officer Harless pulled her out of the doorway and directed her toward Officer McCreless, who then grabbed her thumb and pulled it behind her back. Viewing the facts and inferences in the light most favorable to Payton, Officer McCreless could not have reasonably believed Payton was trying to grab Officer Harless from behind.

movements, and who had already been pulled from the doorway for a fellow officer to enter – and twist her thumb up behind her back so severely that she suffered tendon damage and a possible bone fracture.  Nor could a reasonable police officer believe he could twist the subdued woman's thumb even harder when she complained he was hurting her.  In short, "[t]he peculiar facts of this case are so far beyond the hazy border between excessive and acceptable force that every objectively reasonable officer had to know he was violating the Constitution."  Vinyard, 311 F.3d at 1355 (quotation marks and brackets omitted).  Accordingly, we reverse the district court's grant of summary judgment as to Payton's § 1983 excessive force claim against Officer McCreless.[7]

## D.    State Law Claims

The district court declined to exercise supplemental jurisdiction over Payton's state law claims because it had granted summary judgment to the defendants on all of Payton's federal law claims.  Because we reverse the district court's grant of summary judgment to Officer McCreless on Payton's § 1983 excessive force claim, we also vacate dismissal of the state law claims and instruct

---

[7]On appeal, Payton does not argue the district court erred in granting summary judgment to Officer Harless on the excessive force claim.

16

the district court to reconsider the question of whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Payton's state law claims.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.**