# United States Court of Appeals
## For the First Circuit

No. 15-1188

UNITED STATES OF AMERICA,

Appellee,

v.

HECTOR GABRIEL CARDONA-VICENTE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Andrew McCutcheon, Research and Writing Specialist, with whom
Eric A. Vos, Federal Public Defender, Vivianne M. Marrero-Torres,
Assistant Federal Public Defender, Supervisor, Appeals Section,
and Patricia A. Garrity, Research and Writing Specialist, were on
brief, for appellant.
Susan Z. Jorgensen, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

March 29, 2016

LYNCH, **Circuit Judge**. A jury convicted Hector Cardona-Vicente ("Cardona") of two counts of possession of a controlled substance with intent to distribute and one count of possession of a firearm in furtherance of a drug trafficking crime. On appeal, Cardona argues that the district court erred in denying his motion to suppress evidence obtained from him after a police officer, during the course of a traffic stop, conducted a pat-frisk of a fanny pack that Cardona was wearing, which contained a Glock pistol, ammunition, drugs, and cash. Upholding the district court's finding that the facts were sufficient to give rise to a reasonable suspicion that Cardona was armed and dangerous at the time of the pat-frisk, we affirm.

I.

"In reviewing the denial of a motion to suppress, '[w]e recount the relevant facts as the trial court found them, consistent with record support,'" United States v. Romain, 393 F.3d 63, 66 (1st Cir. 2004) (alteration in original) (quoting United States v. Lee, 317 F.3d 26, 30 (1st Cir. 2003)), and "[w]e view the facts in the light most favorable to the district court's ruling," United States v. Soares, 521 F.3d 117, 118 (1st Cir. 2008) (quoting United States v. Kimball, 25 F.3d 1, 3 (1st Cir. 1994)).

On May 17, 2013, Officer Melvin Martínez, a fifteen-year veteran of the Puerto Rico Police Department, was on motorcycle patrol in Caguas, Puerto Rico. While meeting up with another

police officer in front of the Plaza del Carmen shopping center, Martínez saw that the driver of a nearby black Jeep Cherokee was not wearing a seatbelt, a violation of Puerto Rico law. Martínez and his fellow officer followed the Jeep and initiated a traffic stop. Inside were the driver, Cardona in the front passenger seat, and a minor in the back seat.

Martínez obtained the vehicle's registration from the driver, who told Martínez that he did not have his driver's license. Martínez then went around the back of the Jeep to check its registration sticker, known as a "marbete" and located at the front of the vehicle, which he did "in a tactical manner so that the occupants of [the] vehicle would not have a good visibility regarding as to where [he] was."

As he rounded the Jeep, Martínez saw Cardona in the passenger seat grabbing a fanny pack wrapped around Cardona's waist in such a way that, based on Martínez's experience, led him to believe that there was a gun in the fanny pack. Cardona appeared to him to be nervous. Martínez then asked Cardona if he had a license to carry a firearm. According to Martínez, Cardona "gestured to [him] that he did not." This testimony was supported by the driver of the Jeep. According to Special Agent Gabriel Ortiz of Homeland Security Investigations -- who later interviewed both Cardona and the driver, and testified during the suppression hearing -- the driver told him that Cardona "remained silent and

looked down and acknowledged non-verbally that he did not [have a license to carry a firearm]."

Martínez, who was fearful for his life at this point, told Cardona to get out of the vehicle. Martínez opened the Jeep's door "in a tactical manner" to prevent Cardona from fleeing. After Cardona stepped out of the vehicle, Martínez touched the fanny pack and felt a gun.

Martínez said to Cardona, "you have a weapon there," to which Cardona responded, "yes." Martínez then "verified" that there was a firearm in the fanny pack; the driver told Ortiz that Cardona unzipped the fanny pack to reveal the weapon. At that point, Martínez read Cardona his rights and placed him under arrest.

The fanny pack contained a .40 caliber Glock pistol with one round of ammunition in the chamber, eleven additional rounds in the magazine, $597 in cash, and fourteen baggies of cocaine. After Martínez confirmed that there was a gun in the fanny pack, he asked Cardona if there was anything else illegal in the car. Cardona told him there were more items under the rear seat of the vehicle. Martínez's fellow officer looked under the seat and found a cigar box with marijuana cigars and twenty-two baggies of marijuana.

Cardona was then taken to the Caguas police precinct. Martínez read Cardona his rights, in Spanish, and also gave them

to him in writing. Cardona signed the statement of rights and indicated on the form that he understood his rights and that he wished to give a statement. He then gave a written statement in which he said, in Spanish, "what they took, well, is mine." Later, another officer again read Cardona his rights and provided them to him in Spanish. After acknowledging that he understood his rights, Cardona signed a waiver of rights. Cardona was then interviewed by Ortiz.

## II.

On May 29, 2013, Cardona was indicted on two counts of possession of a controlled substance (cocaine and marijuana) with intent to distribute, 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). The indictment also included a firearms and ammunition forfeiture allegation. 18 U.S.C. § 924(d)(1); 28 U.S.C. § 2461(c).

On September 16, 2013, Cardona filed a motion to suppress all materials seized from him by the police as well as statements he made to the police "as fruit of the traffic stop, illegal search, and seizure." Cardona argued that "[b]ased on the totality of the circumstances known to [the Puerto Rico Police Department] at [the time of the traffic stop] they had no basis to suspect an ongoing criminal activity," that Martínez was operating on a mere "hunch," and that Cardona's detention consequently did "not fall

- 5 -

within the reasonable investigatory stop of Terry v. Ohio, 392 U.S. 1 (1968)."

A suppression hearing was held before a magistrate judge on November 14, 2013. Both Martínez and Ortiz testified at the hearing, and the government submitted seven documents into evidence without objection. Cardona did not take the stand or submit any evidence in support of his motion. In a Report and Recommendation issued on November 18, 2013, the magistrate judge recommended denial of Cardona's motion, concluding that "under the totality of the circumstances, there was reasonable suspicion to stop the vehicle in which defendant Cardona was an occupant," that Cardona's warrantless arrest was based on probable cause, that the subsequent search of the car was legal, and that Cardona's statements were admissible.

Cardona filed an objection to the magistrate judge's Report and Recommendation on December 23, 2013, arguing, inter alia, that an officer's "speculation resulting from the way a person holds a fanny pack is insufficient" to justify a search. The government opposed Cardona's objection.

On February 26, 2014, the district court adopted the magistrate judge's Report and Recommendation and denied Cardona's motion to suppress. United States v. Cardona-Vicente, No. 13-cr-308, 2014 WL 794591 (D.P.R. Feb. 26, 2014). Though the magistrate judge had not done so, the district court engaged in an independent

Fourth Amendment analysis of the pat-frisk of the fanny pack. Id. at *1-2. The court recognized that a pat-frisk must be supported by "reasonable suspicion that the person subjected to the frisk is armed and dangerous," id. at *1 (quoting Arizona v. Johnson, 555 U.S. 323, 327 (2009)), and it explained that "there [were] at least three factors here alerting Agent Martinez: (1) Cardona's nervousness, (2) the type of fanny pack around Cardona's waist, (3) the manner in which Cardona grabbed the fanny pack," id. at *2. The court concluded that these factors "were sufficient to give Agent Martinez reasonable suspicion that Cardona was armed and dangerous," and that once the pat-frisk was conducted, "the arrest was justified." Id.

After plea bargaining broke down, a two-day jury trial was held on July 15 and 16, 2014. Cardona was convicted on all three counts and sentenced to a total of sixty months of imprisonment. This appeal followed.

III.

On appeal, Cardona argues that "[a]lthough [he] does not challenge the validity of the original Terry stop, it is [his] contention that the district court erred in finding that factors utilized as justification for the subsequent frisk . . . [gave] rise to the sort of particularized suspicion necessary to support

a pat-frisk under Terry."[1]  He argues that the items seized from him, as well as statements he later gave to the police, should be suppressed as fruits of the unconstitutional pat-frisk.  See United States v. Camacho, 661 F.3d 718, 728-29 (1st Cir. 2011) (explaining fruit of the poisonous tree doctrine).

When reviewing the denial of a motion to suppress, we review the district court's legal determinations de novo and its factual findings for clear error.  United States v. Collins, 811 F.3d 63, 65 (1st Cir. 2016).

"[I]n determining whether a pat-down search is an appropriate step following a valid Terry stop, the key is whether, under the circumstances, 'the officer is justified in believing that the person is armed and dangerous to the officer or others.'" Romain, 393 F.3d at 71 (quoting United States v. Schiavo, 29 F.3d 6, 8 (1st Cir. 1994)).  "It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met.  To assess the legality of a protective frisk, a court looks at the totality of the circumstances to see whether the officer had a particularized,

---

[1]    It is not clear from the record whether there was a pat-frisk of his person.  As best we can tell, there was never a frisk of the defendant's person, just a touching by Martínez of the fanny pack after Cardona got out of the car.  Assuming that the touching of the fanny pack was nonetheless a search, Cardona's claim fails, as we explain below.

- 8 -

objective basis for his or her suspicion." United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005).

The "touchstone" of this inquiry is the reasonableness of the officer's actions, which, in turn, "depends on what the officer knows (or has reason to believe) and how events unfold." Romain, 393 F.3d at 71. "Evaluating whether an officer's suspicions are (or are not) reasonable is a fact-sensitive task, bound up in the warp and woof of the surrounding circumstances." United States v. Chhien, 266 F.3d 1, 8 (1st Cir. 2001). Accordingly, "[d]eference is due to the experienced perceptions of the officers, . . . but not blind deference; these perceptions must be reasonable under an objective standard." United States v. Woodrum, 202 F.3d 1, 7 (1st Cir. 2000) (citing Ornelas v. United States, 517 U.S. 690, 699-700 (1996)); see Terry, 392 U.S. at 27 ("And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (emphasis added)). Indeed, the Fourth Amendment analysis "makes due allowance for the need for police officers to draw upon their experience and arrive at inferences and deductions that 'might well elude an untrained person.'" United States v. Arnott, 758 F.3d 40, 44 (1st Cir. 2014) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

Though the seatbelt violation that justified the initial stop of the Jeep would have been clearly insufficient to justify a pat-frisk, several factors became apparent as the traffic stop progressed which were sufficient to give rise to a reasonable suspicion that there was a gun in Cardona's fanny pack. See Soares, 521 F.3d at 120. The driver of the car could not produce a driver's license, suggesting the Jeep may have been stolen. Cardona, the passenger, appeared nervous during the stop. As Martínez was walking around the Jeep to check the registration sticker, he saw that Cardona was clutching a fanny pack in a manner that, based on his experience, was consistent with there being a gun inside. See United States v. Sanchez, No. 15-1107, 2016 WL 1127764, at *4 (1st Cir. Mar. 23, 2016) (affirming the denial of a motion to suppress and crediting an officer's belief, "based on his experience," that the manner in which a suspect reached for his waistband "suggest[ed] that [the suspect] had a gun"); see also United States v. Young, 105 F.3d 1, 7 (1st Cir. 1997) (noting that "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer" (alteration in original) (quoting United States v. Stanley, 915 F.2d 54, 56 (1st Cir. 1990))). Indeed, Martínez testified that "of course" he feared for his life when he saw the manner in which Cardona held the fanny pack. See Soares, 521 F.3d at 120 ("The facts demonstrate that the officers believed that

their safety was at risk."). With his suspicions already aroused, Martínez asked Cardona if he had a license to carry a firearm; Cardona heightened Martínez's concerns when he evasively responded by looking down and then non-verbally, gesturing with his head, admitting that he did not have a license. This sequence of events was sufficient to give rise to a reasonable suspicion that Cardona was armed and dangerous, and Martínez was justified in asking him to get out of the car and in touching the fanny pack.

Cardona attempts to liken his case to the facts of McKoy, a case, unlike this one, in which we affirmed a district court's grant of a motion to suppress filed by a defendant who was pat-frisked after his car was stopped for a parking violation. 428 F.3d at 39. There, the government appealed and in the district court had only "relie[d] on two factors as rationales for the officers' concern for their safety: (1) the dangerousness of the neighborhood and (2) McKoy's nervous appearance and movements inside the car." Id. at 40. The court gave little weight to the dangerousness of the neighborhood,[2] noting that "[w]hile police

_____

[2] The government here makes much of the fact that Martínez described Caguas as a high-crime area. See United States v. Rabbia, 699 F.3d 85, 90 (1st Cir. 2012) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." (quoting Illinois v. Wardlow, 528 U.S. 119, 124 (2000))). Neither the magistrate judge nor the district court made any findings as to the dangerousness of the area in which the pat-frisk occurred. We decline to draw our own conclusion "because this is a factual issue best left to the

are permitted to take the character of a neighborhood into account when assessing whether a stop is appropriate," the evidence presented "len[t] only weak support to the officers' perception that McKoy was armed and dangerous." Id. And we agree with McKoy that "[n]ervousness is a common and entirely natural reaction to police presence." Id. In McKoy, we concluded, as did the trial court, that "[i]t is simply not reasonable to infer that a driver is armed and dangerous because the officers believe that he appears nervous and reaches toward the car's console when approached by police, even in a high-crime neighborhood." Id. at 41.

Cardona's reliance on McKoy is misplaced. Unlike in McKoy, Martínez's suspicion that Cardona was armed and dangerous was based on more particularized indicia of danger than mere nervousness. See Camacho, 661 F.3d at 726 (noting "the suspicion must be both objectively reasonable and 'grounded in specific and articulable facts'" (quoting United States v. Hensley, 469 U.S. 221, 229 (1985))).

We appreciate the concern expressed by the Federal Public Defender in his claim that the Puerto Rico Police Department routinely conducts unconstitutional searches absent reasonable suspicion or probable cause. If true, that would be cause for

---

district court and, in the end, not necessary to our conclusion." United States v. Hart, 674 F.3d 33, 39 n.1 (1st Cir. 2012).

concern.  But this case is not characterized by such facts.  There was reasonable suspicion here.

Because the pat-frisk was legal, Cardona's fruit of the poisonous tree argument fails as well.

IV.

The district court's denial of Cardona's motion to suppress is <u>affirmed</u>.