# United States Court of Appeals
## For the First Circuit

No. 14-2150

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY M. HAMILTON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Lynch, Thompson, and Barron,
Circuit Judges.

Stylianus Sinnis, Assistant Federal Public Defender, with whom Federal Public Defender Office was on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

April 20, 2016

**LYNCH**, **Circuit Judge**.    Anthony Hamilton entered a conditional guilty plea to armed bank robbery and related firearm charges, reserving his right to appeal the denial of his motion to suppress.    On appeal, he challenges the denial of his motion to suppress evidence seized during a warrantless search of a residence by police.    The sole issue is whether the police had a reasonable belief that another man, Tommy Smith, lived at and would be present at that residence on February 16, 2011, thus permitting the police to enter the residence to execute an arrest warrant for Tommy Smith.    Hamilton argues that the information about Tommy Smith's residence was not recent or certain enough to support such a reasonable belief.    We affirm.

I.

We recite the facts as found by the district court in its denial of the motion to suppress, consistent with record support.    United States v. Cardona-Vicente, No. 15-1188, 2016 WL 1211860, at *1 (1st Cir. Mar. 29, 2016).

On December 16, 2010, a man robbed a bank in Malden, Massachusetts.    The robber demanded money from a teller and received $4,700.    As the robber attempted to leave the bank, a bank employee activated a "man-trap" mechanism that locked the robber between the inside of the bank and the outside of the

building.[1]  The robber broke out by pulling out a handgun and firing several rounds into the exit door.

A description of the robber, along with information from other bank robberies in the area that police believed may have been connected, was posted on a website called Mass Most Wanted. An anonymous tip, delivered via the website on January 5, 2011, suggested that the suspect in another bank robbery in Westford, Massachusetts, looked like someone named Anthony Hamilton.

A police investigator obtained a driver's license photo and booking photograph of Hamilton, who had a prior criminal history.  He compared those photos with surveillance camera images of the Malden robber and concluded it was the same person.  The investigator also determined that Hamilton was on probation and he contacted Hamilton's state probation officer, who identified the Malden robber in a surveillance camera image as Hamilton.

The investigation yielded several potential addresses for Hamilton.  The main address was a Charlestown, Massachusetts, address that appeared on Hamilton's criminal record, driver's license, and outstanding state court probation warrants.  A public database also associated the name Anthony Hamilton with 16 Harrow Street in Dorchester, Massachusetts.  Hamilton's name was not

---

[1]     To leave the bank, one must walk through one door into a vestibule and then through another door to the outside.  The doors can be locked remotely from a teller's station, allowing someone to be trapped in the vestibule between the two doors.

associated with 16 Harrow Street in any postal, utility, or criminal records. The police nonetheless focused on 16 Harrow Street and found that an individual named Tommy Smith received mail at that address. Tommy Smith had an outstanding arrest warrant for motor vehicle violations, issued on January 11, 2011, that listed 16 Harrow Street as his address. Tommy Smith was also connected to 16 Harrow Street by a public database, booking reports, a National Insurance Crime Bureau accident report, and credit bureau reports. Additionally, a car seen parked outside 16 Harrow Street was registered to someone with the surname Smith.

At some point in January, police installed a pole camera on Harrow Street for surveillance purposes. Neither Hamilton nor Tommy Smith was ever positively identified from the continuous pole camera footage taken on the street.[2]

On February 14, 2011, an arrest warrant was issued for Hamilton. The Massachusetts State Police Violent Fugitive Apprehension Squad, the Boston Police Department Special Operations Squad, and the Federal Bureau of Investigation Bank Robbery Task Force agreed to coordinate to execute Tommy Smith's warrant at 16 Harrow Street. Officers from the three groups were

---

[2] The record only contains two still images from the pole camera. Those images suggest that the footage from the pole camera was too poor in quality to determine the identity of anybody entering the residence. Video footage from the pole camera was never entered into the record.

informed at a briefing that they were entering 16 Harrow Street to arrest Tommy Smith, but that they might also be able to execute the arrest warrant for Hamilton at that address.

At around 6 AM on February 16, 2011, the police arrived at 16 Harrow Street. Amina Smith, a resident of the apartment and Hamilton's longtime girlfriend, answered the knock on the door. She indicated that Tommy Smith did not live there, but officers entered the apartment anyway. The officers found Hamilton and executed the arrest warrant for him.

At the time of the police entry into 16 Harrow Street, there were ten occupants in the apartment, among them Carolyn Smith, the renter of the apartment. Carolyn Smith was the mother of Amina Smith and Tommy Smith. Amina Smith was also present, as was a three-month-old baby that was born to Amina Smith and Hamilton. Carolyn Smith's boyfriend, Willie James Tutt, was also present. Tommy Smith was not present. He had not been living at 16 Harrow Street for over a year, although he did stop by periodically to pick up his mail.

Carolyn Smith and Tutt signed consent forms permitting the police to search the apartment. The search uncovered a 9 millimeter pistol with two magazines, bullets, and a gun carrying case from under a mattress in Amina Smith's bedroom.

On March 30, 2011, a federal grand jury indicted Hamilton for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and

(d); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); using, carrying, or discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

On January 7, 2013, Hamilton filed a motion to suppress all evidence seized from 16 Harrow Street. On September 4, 2013, the district court denied the motion. United States v. Hamilton, No. 11-CR-10133, 2013 WL 4759654 (D. Mass. Sept. 4, 2013). The district court began by finding that Hamilton had Fourth Amendment standing to challenge the seizure because he was an overnight guest with a reasonable expectation of privacy in the premises. Id. at *4. The district court then found that the police did not possess a reasonable belief that Hamilton resided at 16 Harrow Street or that he would be there at the time of entry. Id. at *5. However, the district court found that the entry into 16 Harrow Street was lawful because the police had a reasonable belief that Tommy Smith resided there and that he would be there at the time of entry. Id. The district court concluded by holding that even though "it certainly appears that the true target that morning was [Hamilton]," the pretextual nature of the entry did not make the search unlawful. Id. at *6.

On June 17, 2014, Hamilton entered a conditional guilty plea to all four counts of the indictment, reserving his right

under Federal Rule of Criminal Procedure 11(a)(2) to appeal the denial of his motion to suppress. On October 8, 2014, Hamilton was sentenced to concurrent terms of four years of imprisonment on each of the armed robbery and felon in possession counts and to a consecutive term of ten years of imprisonment for using, carrying, and discharging a firearm during and in relation to a crime of violence. This appeal followed.

## II.

The only issue in this appeal is whether the police had a reasonable belief that Tommy Smith lived at and would be present at 16 Harrow Street when police entered the residence.[3]

In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and

---

[3] A number of the issues addressed by the district court are not argued before us, and we do not decide those issues.

The government does not argue, and nor did it argue in the district court, that the entry of 16 Harrow Street was justified by the arrest warrant for Hamilton. Rather, the government attempts to justify the entry of 16 Harrow Street solely on the basis of the Tommy Smith arrest warrant.

Nor does the government argue, as it did in the district court, that because Hamilton was only an overnight guest and the actual residents of 16 Harrow Street gave consent to search, Hamilton lacked the reasonable expectation of privacy in the 16 Harrow Street residence that he must show to challenge the entry of the residence on the basis of the Tommy Smith arrest warrant.

Meanwhile, Hamilton does not argue, as he did in the district court, that the Tommy Smith arrest warrant was a pretextual and therefore inadequate legal basis for entry of 16 Harrow Street.

Nor does Hamilton argue, as he did in the district court, that even if the police entry into 16 Harrow Street was lawful, Carolyn Smith's and Tutt's consents to search were involuntary.

its conclusions of law de novo.  Cardona-Vicente, 2016 WL 1211860, at *3.  We will affirm if any reasonable view of the record supports the district court's decision.  United States v. Sanchez, No. 15-1107, 2016 WL 1127764, at *2 (1st Cir. Mar. 23, 2016) (citing United States v. Coccia, 446 F.3d 233, 237 (1st Cir. 2006)).

An arrest warrant authorizes the police to enter a suspect's residence "when there is reason to believe the suspect is within."  Payton v. New York, 445 U.S. 573, 603 (1980).  Even if it becomes known after entry that the residence is not the suspect's, the entry is justified if the police had "reasonably believed" that (1) the suspect resided at the location[4] and (2) the suspect would be present.  United States v. Graham, 553 F.3d 6, 12 (1st Cir. 2009); see also United States v. Werra, 638 F.3d 326, 337 (1st Cir. 2011).[5]

---

[4]    The parties agree that, to justify entry into 16 Harrow Street, law enforcement needed to possess a reasonable belief that Tommy Smith resided at 16 Harrow Street, even though it turned out that Tommy Smith did not in fact reside at that address.

[5]    The government argues that reasonable belief is a less stringent standard than probable cause, citing Solis-Alarcón v. United States, 662 F.3d 577, 580–81 (1st Cir. 2011), and Werra, 638 F.3d at 337.  Hamilton does not argue otherwise, either in his opening brief or in his reply brief.  We assume without deciding that reasonable belief is a lesser standard than probable cause, although we note that our decision does not turn on that assumption because the government prevails even under a probable cause standard.

- 8 -

Hamilton contends that neither requirement was met. First, he argues that the police lacked a reasonable belief that Tommy Smith resided at 16 Harrow Street. We disagree. There were multiple reasons for the police to reasonably believe that Tommy Smith lived at 16 Harrow Street. An outstanding state arrest warrant, issued on January 11, 2011, listed 16 Harrow Street as his residence. Postal records indicated that Tommy Smith received mail there. A public database, booking reports, a National Insurance Crime Bureau accident report, and credit bureau reports also connected Tommy Smith to the address.[6]

Hamilton points out that much of the above information connecting Tommy Smith to 16 Harrow Street is undated. He argues that to the extent there is a date associated with the information, it was not sufficiently recent to support a reasonable belief that Tommy Smith resided at 16 Harrow Street when the police entered on February 16, 2011. But the postal records search -- which must have been conducted sometime after the anonymous tip kicked off the investigation into Hamilton on January 5, 2011 -- established

---

[6] The government also points to the fact that a motor vehicle parked near 16 Harrow Street was registered to someone with the surname Smith. Hamilton argues that the connection between that car and that very common last name adds nothing to the reasonable belief calculus, while the government argues that this is a relevant data point as "we examine the information known to the officers in the totality and not in isolation," Graham, 553 F.3d at 14. We think that this vehicle registration is at best a minor additional data point, but that the other data points we described above more than suffice to support reasonable belief.

that Tommy Smith was receiving mail at 16 Harrow Street as of sometime in January. Additionally, the state arrest warrant for Tommy Smith, which listed his address as 16 Harrow Street, was issued on January 11, 2011. Even if Hamilton is correct that the address on the warrant was based on the information that Tommy Smith provided at the time of his August 2010 arrest and did not represent any more recent information, that information was still only six months old. While it is true that the age of the information connecting a suspect to an address is a relevant factor in determining the reasonableness of an officer's belief, one of the cases Hamilton relies on for that proposition found that the police reasonably believed the suspect lived in a particular location based on information that was nine months old. Payton v. City of Florence, 413 F. App'x 126, 132 (11th Cir. 2011) (per curiam). Where recent postal records were corroborated by information provided by Tommy Smith himself at most six months prior, and where that address information was wholly consistent with all of the other independent, undated sources of information, the totality of the information supported a reasonable belief that Tommy Smith lived at 16 Harrow Street at the time of police entry. See Graham, 553 F.3d at 14.

Hamilton also argues that the database information does not support a reasonable belief that Tommy Smith resided at 16 Harrow Street, given that Tommy Smith was twenty-eight years old

at the time and that it is common for young adults to use their parents' address for various records even when they no longer live there. While that may be a factor to be considered in the reasonable belief calculus, it is only one factor. Beyond that, the record does not indicate that any address other than 16 Harrow Street was associated with Tommy Smith in any of the various kinds of records searched by the police. The officers' determination that Tommy Smith resided at 16 Harrow Street was supported by the record.

Second, Hamilton argues that even so, the officers lacked a reasonable belief that he would be present at the particular time of entry. But as it was reasonable to believe that Tommy Smith lived at 16 Harrow Street, it was reasonable for police to believe that he would be home at 6 AM. Solis-Alarcón, 662 F.3d at 582 ("[I]f [the suspect] did live there, it would be reasonable to believe him in residence early in the morning."); see also United States v. Thomas, 429 F.3d 282, 286 (D.C. Cir. 2005); United States v. Bervaldi, 226 F.3d 1256, 1267 (11th Cir. 2000).

Hamilton argues that the time of day may support a reasonable belief in the suspect's presence at the address only if there is no serious question that the suspect lives at that location. He argues, however, that there was a serious question about Tommy Smith's residence because the police had installed a

continuously operating pole camera outside of 16 Harrow Street about a month earlier and that camera had never captured Tommy Smith entering or exiting 16 Harrow Street. It is true that Tommy Smith was never positively identified on the pole camera. But a police investigator testified at the suppression hearing that the poor quality of the pole camera footage prevented a positive identification of anyone entering the building:

> Q:   You testified you never saw [Tommy Smith] there, correct?
> A:   You saw the pole camera pictures. They're not that great. So, I don't know if he was there or not.

He also testified that although the pole camera footage showed a person entering 16 Harrow Street sometime in January 2011, the identity of that person could not be identified from the image:

> Q:   Okay.   Now let's talk about the pole camera.
>      I was just given this morning two photographs from this pole camera. Are these photographs from the pole camera?
> A:   That's correct.
> Q:   Do you see Mr. Hamilton in those photographs?
> A:   I can't identify Mr. Hamilton in those photographs.
> Q:   Do you see Mr. Hamilton in those photographs?
> A:   No.
> Q:   You can't identify anybody in those photographs, can you?
> A:   Just the figure walking into 16 Harrow from Troy Connally's car.
> Q:   You can identify that figure?
> A:   I'm just saying there's a person getting out of Troy Connally's car going into 16 Harrow.

- 12 -

Q:   Can you identify that person?
A:   No.

We have been given copies of the photographs, and they are indeed of poor quality.[7]

All of the records available to the police suggested that Tommy Smith resided at 16 Harrow Street, and nothing in the pole camera footage undermined that conclusion.  The evidence supports the conclusion that it was reasonable for the police to believe that Tommy Smith lived at 16 Harrow Street and that he would be there at the time of the police entry.

We affirm.

---

[7]    To the extent that there is any uncertainty about the quality and probative value of the pole camera footage, the burden was on Hamilton to establish a violation of his Fourth Amendment rights, Werra, 638 F.3d at 330, and thus Hamilton must bear the brunt of that uncertainty.