LYNCH, Circuit Judge,
concurring.
Lamar Young was convicted, pursuant to his conditional guilty plea, of drug and weapons charges. That conviction has now been set aside. The police had a warrant for Young’s arrest, and in my view — in accord with the factfinding in the district court — the officers acted reasonably in lo-eating and arresting him. The positions the prosecution chose' to take, and chose not to take, on two different issues lead me to this concurrence.
I agree with the majority that there was insufficient evidence to support a reasonable belief[9] that Young resided at Jennifer Coleman’s apartment. Our analysis takes the form of a two-part Payton inquiry because the government chose that legal theory. See United States v. Hamilton, 819 F.3d 503, 506 (1st Cir. 2016) (articulating the two inquiries). But I am not inclined to think either that this case is about “residence” or that a two-part Payton inquiry ought to apply. Because the Walnut Street property was Coleman’s residence — not Young’s — I consider Young’s Fourth Amendment interests to be far weaker than they would have been at Young’s own residence. See Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (“[T]he extent to which the Fourth Amendment protects people may depend upon where those people are.”); United States v. Battle, 637 F.3d 44, 48 (1st Cir. 2011) (“To prevail on a [Fourth Amendment] claim ... a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched.”).
Rather, I consider this case to be about whether the police had a reasonable belief that Young, for whom there was an outstanding arrest warrant, would be located at the premises on Walnut Street. In answering that question, I would employ the standard adopted by our sister court in United States v. Bohannon, 824 F.3d 242 (2d Cir.2016). See id. at 251 (“[I]f, at the time of entry, law enforcement officers possessed a valid warrant for the subject’s *24 arrest and reason to believe that he was then in the premises entered, the subject of the arrest warrant will not be heard to complain that entry was not authorized by a search warrant.”); id. at 258 (“The third-party resident’s Fourth Amendment right in such circumstances to have the entry into his home authorized by a search warrant does not extend to the subject of the arrest warrant.” (citation omitted)). And I would answer that question in the affirmative. Each step of the investigation made the officers’ belief as to Young’s location more and more reasonable. In this regard, I disagree with my colleagues.
I concur, nevertheless, because the prosecution failed to satisfy Payton’s residence inquiry. The prosecution agreed with the defense’s position that Payton’s two-part inquiry applied and so represented to the district court — both to the magistrate judge and to the district judge. And, in my view, the prosecution should be bound by the theory it adopted. I do not fault either that court or ours for adhering to the path agreed upon by both the government and the defendant.
The prosecution also made a second choice that leads me to concur. The inevitable discovery doctrine “allows for the admission of [otherwise excludable] evidence that would have been discovered even without the unconstitutional source.” Utah v. Strieff, — U.S. -, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016) (citing Nix v. Williams, 467 U.S. 431, 443-44, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The government’s brief makes only a glancing reference to the doctrine of inevitable discovery — and only in service of an argument that Coleman’s consent to the search of her home would have led inevitably to discovery of the seized cocaine and firearm. The government notably did not argue that officer Michaud, standing outside Coleman’s residence, saw Young inside at the window and so knew that Young was present in that apartment. Regardless of whether the officers at Coleman’s apartment door otherwise had a reasonable basis to believe Young was located inside the apartment, officer Michaud’s observation could have justified his own entry — or the entry of a second group of officers from outside the building — and perhaps would have led inevitably to discovery of the disputed evidence. See United States v. Almeida, 434 F.3d 25, 28 (1st Cir. 2006) (observing that the deterrence rationale for the exclusionary rule has minimal force “if the evidence would have been discovered lawfully” (citing Nix, 467 U.S. at 444, 104 S.Ct. 2501)); United States v. Scott, 270 F.3d 30, 43 n.7 (1st Cir. 2001) (“[We have] rejected a strict requirement that the alternate legal avenue of investigation be actively pursued at the time of the illegal search or seizure.”).
Having failed to take advantage of these justifications for its search of Coleman’s residence, the government must now live with-the consequences.

. I also agree that, even assuming the Payton "reasonable belief’ standard is something less than probable cause, the government did not prove even that. See supra at 19 n.6; United States v. Hamilton, 819 F.3d 503, 506 n.5 (1st Cir. 2016) ("We assume without deciding that reasonable belief is a lesser standard than probable cause....”).