14-4679-cr
United States v. Bohannon

# In the

# United States Court of Appeals

## For the Second Circuit

August Term, 2015

(Argued: December 15, 2015    Decided: May 31, 2016)

Docket No. 14-4679-cr

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

JONATHAN BOHANNON,

*Defendant-Appellee,*

RONELL HANKS, AKA BIZ, AKA ACE, JERMAINE BUCHANAN, AKA HOT MAIN, RASHAD HEARD, OMAR BAHAMONDE, AKA DIRK, TAVAR JOHNSON, MOYAN FORBES, EBONEY WOOD, AKA SIS, TYSHEEM WRIGHT, SYBIL HOPKINS, STEVEN HUTCHINSON, AKA L, CARLOS SOTO, AKA MACHON, YAZMINE MORALES, D'METRIUS WOODWARD, AKA FLEA,

*Defendants.*

1

Before:

RAGGI, WESLEY, DRONEY, *Circuit Judges.*

On appeal from a suppression order of the United States District Court for the District of Connecticut (Hall, *C.J.*), we consider whether defendant, apprehended pursuant to a valid arrest warrant in a third party's residence entered without search-warrant authorization, is entitled to have any evidence seized incident to arrest excluded from trial as the fruit of an unlawful entry. Like the district court and eight of our sister circuits, we here conclude that, whether the subject of an arrest warrant is apprehended in his own home or a third party's residence where he is a guest, his Fourth Amendment privacy rights with respect to entry are those stated in <u>Payton v. New York</u>, 445 U.S. 573, 603 (1980), <u>i.e.,</u> at the time of entry, arresting officers must possess (a) a valid arrest warrant for the subject and (b) reason to believe that the subject is then in the premises. In such circumstances, the third party's Fourth Amendment right to have a search warrant authorize entry into his home, <u>see</u> <u>Steagald v. United States</u>, 451 U.S. 204, 222 (1981), does not extend to the subject of the arrest warrant. Where we depart from the district court, however, is in here

2

concluding that the totality of circumstances established that, at the time of entry, law enforcement officers possessed the requisite reason to believe that defendant was then present in the third party's residence.

VACATED AND REMANDED.

———————

TRACY LEE DAYTON, Assistant United States Attorney (Rahul Kale, Sandra S. Glover, Assistant United States Attorneys, *on the brief*), *for* Deirdre M. Daly, United States Attorney for the District of Connecticut, New Haven, Connecticut, *for Appellant*.

STEVEN B. RASILE, Law Offices of Mirto & Rasile, West Haven, Connecticut, *for Defendant-Appellee*.

———————

REENA RAGGI, *Circuit Judge*:

Defendant Jonathan Bohannon is awaiting trial in the United States District Court for the District of Connecticut (Janet C. Hall, *Chief Judge*) on charges of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and 280 grams or more of cocaine base, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 841(b)(1)(B)(ii), 846; possession with intent to distribute 280 grams or more of cocaine base, see id. §§ 841(a)(1), 841(b)(1)(A)(iii); possession of firearms and ammunition by a convicted felon, see 18 U.S.C. §§ 922(g)(1),

3

924(a)(2); and possession of firearms in furtherance of a drug trafficking crime, see id. § 924(c)(1)(A)(i).

On this interlocutory appeal, see 18 U.S.C. § 3731, the United States challenges the district court's December 15, 2014 order suppressing drugs and money seized incident to Bohannon's arrest in the home of Shonsai Dickson. See United States v. Bohannon, 67 F. Supp. 3d 536 (D. Conn. 2014). The district court ruled that because Bohannon's apprehension was pursuant to an arrest warrant, he could not mount a Fourth Amendment challenge to the seizures at issue based on the fact that entry into Dickson's home was not authorized by a search warrant. See Steagald v. United States, 451 U.S. 204, 222 (1981) (holding search warrant necessary to protect privacy interests of third party whose home is searched for subject of arrest warrant). Nevertheless, the district court suppressed the seized drugs and money, concluding that, at the time arresting officers entered Dickson's home, they lacked the requisite reason to believe that Bohannon was then in the premises. See Payton v. New York, 445 U.S. 573, 603 (1980) (holding that arrest warrant carries with it limited authority to enter subject's dwelling when there is "reason to believe" he is within). The

4

government argues that the district court correctly relied on <u>Payton</u>, rather than <u>Steagald</u>, in analyzing Bohannon's Fourth Amendment challenge, but erred in concluding that the totality of circumstances failed to satisfy the reason-to-believe-presence prong of <u>Payton</u>. We agree for reasons set forth in this opinion and, therefore, we vacate the challenged suppression order and remand the case to the district court for further proceedings consistent with this opinion.

## I.     <u>Background</u>[1]

At approximately 6:00 a.m. on December 5, 2013, law enforcement officers entered Shonsai Dickson's apartment at 34 Morgan Avenue in Bridgeport, Connecticut ("34 Morgan Avenue" or "the premises"), to execute an arrest warrant for defendant Bohannon. Other officers were simultaneously executing arrest warrants for more than a dozen of Bohannon's confederates in the Trumbull Gardens Organization ("TGO"), whose narcotics and firearms trafficking had been the focus of a two-year investigation.

---

[1] The facts reported herein were developed at a suppression hearing before the district court.

A.    Determination of Bohannon's Whereabouts on December 5, 2013

On December 5, 2013, officers initially planned to arrest Bohannon at 103 Crestview Drive, his Bridgeport residence.   Sometime between 5:00 and 5:30 a.m., however, the investigation's lead FBI agent, Michael Zuk, concluded that Bohannon was not at his home; rather, Zuk believed that Bohannon was at Dickson's 34 Morgan Avenue apartment, approximately two miles away.  Zuk's belief was based on information provided to him by fellow officers that morning, viewed in light of the totality of information gathered in the TGO investigation. See generally United States v. Garcia, 413 F.3d 201, 213 (2d Cir. 2005) (explaining that law enforcement officers may rely on "collective knowledge of their colleagues" in determining probable cause).  The relevant information can be summarized as follows.

First, law enforcement officers physically surveilling 103 Crestview Drive on December 5 in anticipation of Bohannon's arrest saw "no indication" that he was in his home.  Nov. 13, 2014 Hr'g Tr. ("Tr.") 15:14.  In particular, they saw no rental car parked in the vicinity of 103 Crestview Drive although, from the TGO

6

investigation, they knew that Bohannon regularly drove rental cars not registered in his name.

Second, at approximately 4:00 a.m. on December 5, cell-site information provided by Verizon Wireless pursuant to a warrant indicated that at 2:38 a.m. that same morning, Bohannon's cell phone was used in a sector of Bridgeport that did not include his 103 Crestview Drive home.

Third, the Verizon data further showed that Bohannon's cell phone— which the TGO investigation indicated was used exclusively by Bohannon—had been in active use up until 2:38 a.m., whereupon it went silent, remaining so through the time of Bohannon's arrest.

From these facts, Zuk inferred that Bohannon had retired for the night soon after 2:38 a.m. at the location where he had last used his phone, which was not his home.[2]

---

[2] Agent Zuk testified that the team was continuously monitoring Bohannon's cell phone activity on the morning of his arrest and, "[h]ad another call been placed to or from this phone, [Zuk] would have been given another cell site location to utilize." Tr. 26:20–22.

Fourth, the Verizon data showed that within the cell phone sector where Bohannon's cell phone was last used at 2:38 a.m. on December 5, 2013, there was only one address to which Bohannon had been linked during the TGO investigation: 34 Morgan Avenue, the location of Dickson's apartment.[3] The link was based on,

(a) Bohannon's own text messages (intercepted between September and December 2013 pursuant to court order) advising confederate Ronell Hanks that Bohannon was at or near Morgan Avenue;

(b) Bohannon's statement to authorities during an October 16, 2013 traffic stop that he was coming "from Morgan Avenue," Tr. 12:10–17;

---

[3] The government contends that the district court erroneously relied on a map offered by Bohannon at the suppression hearing, which purportedly showed that 34 Morgan Avenue is outside the coverage area for the relevant cell tower, when the map was admitted only for the limited purpose of establishing the location of 34 Morgan Avenue and the relevant cell tower. The district court's opinion, however, acknowledges that the purpose of the map was so limited and, further, makes clear its factual finding that, around 2:30 a.m., Bohannon's cell phone was in an area that included 34 Morgan Avenue but not 103 Crestview Drive. See United States v. Bohannon, 67 F. Supp. 3d at 540 n.3, 546.

(c)     authorities' observations of Bohannon, after the aforementioned traffic stop, driving to the general area of 34 Morgan Avenue and walking to the entrance door of that address; and

(d)     data from Bohannon's previous cell phone, which on several occasions in 2013 placed him within 10 meters of 34 Morgan Avenue.[4]

Fifth, an October 2013 background property check of 34 Morgan Avenue revealed that the resident of that building's second-floor apartment was Shonsai Dickson.  Agents were familiar with Dickson's name as that of the lessee of another apartment in Trumbull Gardens out of which TGO members were known to sell heroin.

Sixth, on November 26, 2013, surveillance officers had observed a Toyota Camry registered to Dickson parked in front of Bohannon's 103 Crestview Drive residence.

---

[4] Bohannon used his previous cell phone—which had a global positioning system ("GPS") that allowed for more precise tracking capabilities than the cell phone he was using at the time of his arrest—until approximately November 2013.

Seventh, officers observed Dickson's Toyota Camry parked outside 34 Morgan Avenue early on the morning of December 5.

B.     The Challenged Arrest and Ensuing Search

Based on the totality of this information, Agent Zuk re-directed the Bohannon arrest team from 103 Crestview Drive to 34 Morgan Avenue. At the time, agents possessed an arrest warrant for Bohannon, but no arrest warrant for Dickson or search warrant authorizing entry into her apartment. Nevertheless, agents proceeded to enter Dickson's apartment through an unlocked back door and, upon finding Bohannon in Dickson's bedroom, placed him under arrest.

Simultaneously, members of the arrest team conducted a security sweep of the bedroom. Under the bed adjacent to where Bohannon was being arrested, authorities observed bags containing a white rock-like substance that they believed to be crack cocaine, which they did not immediately seize. Authorities also searched Bohannon's pants and in one pocket found a large quantity of cash, which they removed before giving the pants to Bohannon so that he could get dressed.

After Bohannon and Dickson were removed from the bedroom, FBI Agent Ryan James informed Dickson that drugs had been observed during the sweep

and that she could be arrested for their presence in her apartment. James then sought, and Dickson provided, consent for a full search of her apartment and car. During this search, authorities seized the bags of crack cocaine earlier seen under the bed; money also found under the bed; additional crack, money, and a scale found in a dresser; and three firearms and ammunition found in a closet. A fourth firearm was seized from Dickson's car. As the drugs were being removed from under the bed and taken out of the bedroom, Bohannon shouted, "it is all mine, don't worry about it." Tr. 119:10–11; see also id. at 74:23–25.[5]

C.     District Court Proceedings

On December 18, 2013, a federal grand jury in the District of Connecticut returned an indictment charging Bohannon and thirteen confederates with various narcotics and firearms offenses.

Bohannon filed a pre-trial motion to suppress the evidence seized from Dickson's apartment and car as the fruit of an illegal entry and an invalid

---

[5] The district court denied Bohannon's motion to suppress these statements in a separate opinion, concluding that (1) Bohannon had previously been advised of and waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966); and (2) in any event, his statement was a spontaneous utterance, not responsive to interrogation. That decision is not at issue in this appeal.

consent. In arguing illegal entry, he advanced two arguments. First, while acknowledging that an arrest warrant carries with it the authority to enter the home of the warrant subject, Bohannon maintained that execution of such a warrant in a third party's home required the further entry authorization of a search warrant, which was plainly lacking here. See Steagald v. United States, 451 U.S. at 222. Second, Bohannon maintained that, even if Steagald protections did not extend to him, the entry and ensuing arrest and search were unlawful under Payton v. New York, 445 U.S. 573, because authorities lacked the requisite reason to believe that he was in those premises at the time of entry.

The district court rejected Bohannon's search-warrant challenge, concluding that Steagald protections applied to a third-party resident not named in an arrest warrant, not to a non-resident guest who was the subject of the arrest warrant. It agreed, however, that the entry was not supported by reason to believe that Bohannon was then present in the premises and, on that Payton ground, suppressed any drugs and money seized incident to Bohannon's arrest. The district court also suppressed all evidence subsequently seized from the premises, finding that Dickson's consent to search her apartment was not

12

voluntary. Although the same consent defect pertained to the search of Dickson's car, the district court did not grant Bohannon's motion to suppress evidence seized therefrom, concluding that Bohannon had no reasonable expectation of privacy in that vehicle.

Invoking 18 U.S.C. § 3731, the government timely appealed, challenging only the suppression of the crack cocaine found under Dickson's bed and the cash found in Bohannon's pants pocket incident to his arrest.[6]

## II.    Discussion

### A.    Standard of Review

On appeal from a challenged suppression order, we review a district court's findings of fact for clear error, and its resolution of questions of law and mixed questions of law and fact de novo.  See United States v. Bershchansky, 788 F.3d 102, 109 (2d Cir. 2015).  The government does not here challenge any factual findings of the district court.  Rather, it challenges that court's application of undisputed facts to the standard enunciated in Payton v. New York, 445 U.S. 573,

---

[6] The government does not challenge the suppression of other evidence found in the subsequent search that the district court ruled was not supported by voluntary consent.

13

and, specifically, its determination that the totality of circumstances did not afford law enforcement officers reason to believe that Bohannon was in Dickson's apartment at the time they entered those premises on December 5, 2013. We review this mixed question of law and fact <u>de novo</u>. <u>See</u> <u>United States v. Singletary</u>, 798 F.3d 55, 59 (2d Cir. 2015) (explaining that review of determination as to whether reasonable suspicion or probable cause existed is <u>de novo</u>); <u>United States v. Davis</u>, 326 F.3d 361, 365 (2d Cir. 2003) (applying <u>de novo</u> review where parties did not dispute relevant facts). We also review <u>de novo</u> Bohannon's legal contention that, regardless of whether authorities had reason to believe that he was in Dickson's apartment at the time of entry, that entry violated the Fourth Amendment because it was not authorized by a search warrant as required by <u>Steagald v. United States</u>, 451 U.S. 204.[7]

---

[7] Although the government invokes our jurisdiction pursuant to 18 U.S.C. § 3731, which makes no provision for a cross-appeal by a defendant, Bohannon may nonetheless assert independent grounds for affirming the suppression order. <u>See</u> <u>United States v. Swarovski</u>, 557 F.2d 40, 49 (2d Cir. 1977) (citing, <u>inter alia</u>, <u>Dandridge v. Williams</u>, 397 U.S. 471, 475–76 & n.6 (1970) (explaining that appellee may, without filing cross-appeal, "urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court," and first considering appellee's

14

We conclude that where, as here, the subject of an arrest warrant is apprehended in a third party's residence where he is a guest, the subject's Fourth Amendment privacy rights with respect to entry of that residence are no greater than the privacy rights he would have had if apprehended in his own home and, thus, are delineated by <u>Payton</u>, not <u>Steagald</u>. We further conclude that the totality of circumstances here satisfied <u>Payton</u>'s requirement that, at the time of entry, law enforcement officers have reason to believe that the subject of the arrest warrant is within the entered premises.[8]

---

alternative ground for affirmance that was, if correct, dispositive (internal quotation marks omitted))); <u>accord</u> <u>United States v. Andino</u>, 768 F.3d 94, 100 (2d Cir. 2014).

[8] <u>Payton</u>'s reason-to-believe requirement applies only if the subject of the arrest warrant has standing to object to the entry of the third-party residence, <u>i.e.</u>, has a legitimate expectation of privacy in that residence. <u>See</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978) (explaining that "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place"). In short, an intruder or other person without a legitimate expectation of privacy in the entered premises could not seek to suppress seized evidence because entering officers lacked a reasonable belief he was present therein. <u>See</u> <u>United States v. Buckner</u>, 717 F.2d 297, 299–300 (6th Cir. 1983) (explaining that, where defendant arrested in third-party home challenges entry, "courts should first focus on the issue of standing" because, "[i]n the usual case, the defendant will not have had a legitimate expectation of privacy in the premises . . . and therefore

B.     The *Payton* and *Steagald* Rules for Executing Arrest Warrants at Residences

The Fourth Amendment recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Where, as here, authorities have a valid warrant for a person's arrest,[9] the Supreme Court has deemed it "constitutionally reasonable" to require the warrant subject "to open his doors to the officers of the law."  Payton v. New York, 445 U.S. at 602–03.  Thus, the Court ruled that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to

_____

will be unable to challenge the search").  The government does not here dispute the district court's conclusion that, as an overnight guest, Bohannon had standing to challenge the entry of Dickson's apartment.  See United States v. Bohannon, 67 F. Supp. 3d at 543 (citing Minnesota v. Olson, 495 U.S. 91, 99 (1990)).

[9] The validity of the warrant for Bohannon's arrest is undisputed and, thus, we need not detail the facts establishing probable cause.

16

believe the suspect is within." Id. at 603.  In these circumstances, entry does not require the further authorization of a search warrant.[10]

Within a year of Payton, the Supreme Court clarified that the same rule does not apply to an individual who is prosecuted based on evidence seized from his home during execution of an arrest warrant for another person thought to be in the premises.  See Steagald v. United States, 451 U.S. at 213–14, 222 (explaining that Steagald was charged with narcotics violations because cocaine belonging to him was found in his home by officers executing arrest warrant for non-resident not found therein).  The Supreme Court observed that two distinct Fourth Amendment interests are implicated when law enforcement officers enter a third party's residence to execute an arrest warrant for a non-resident: (1) the subject of the arrest warrant has an "interest in being free from an unreasonable seizure," id. at 216; and (2) the third-party resident has an "interest in being free from an unreasonable search of his home," id.  Addressing itself only to the latter interest and, specifically, to "the narrow issue" of "whether an arrest warrant—

---

[10] Citing Payton, this court recently held that physical entry of a home to effect its resident's arrest without an arrest warrant is presumptively unreasonable.  See United States v. Allen, 813 F.3d 76, 80–81 (2d Cir. 2016).

as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of [a third-party resident] not named in the warrant," the Supreme Court concluded that an arrest warrant was not adequate to protect such a person from an unreasonable search.  Id. at 212–13.  As to that third-party resident, the Fourth Amendment requires the entry to be authorized by a search warrant.  See id. at 216, 222.

    C.    *Payton*, Not *Steagald*, Delineates the Fourth Amendment Rights of an Arrest-Warrant Subject Apprehended in a Third-Party Residence Where He Is a Visitor

The government does not—and cannot—dispute that entry into Shonsai Dickson's home without a search warrant was unlawful as to her in light of Steagald.  But it is not the third-party resident, Dickson, who is before us in this case.  Rather, it is Bohannon, the subject of the arrest warrant executed in Dickson's home, who invokes Steagald to argue that his Fourth Amendment rights were violated because Dickson's home was entered without a search warrant.   Steagald does not afford him such a claim.  The Supreme Court there made clear that it was recognizing only the third-party resident's right to a search warrant and expressly leaving open the question of "whether the subject

18

of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home." Id. at 219. Indeed, the question remains unanswered by the Supreme Court to this day.

After Payton—but prior to Steagald—this court held that "police may enter a dwelling to execute an arrest warrant for a person other than its owner or tenant where there exists reasonable belief that the party sought will be found therein." United States v. Manley, 632 F.2d 978, 983 (2d Cir. 1980) (internal quotation marks omitted). We have not considered the question, however, in the aftermath of Steagald. See United States v. Snype, 441 F.3d 119, 133 (2d Cir. 2006) (noting that question remains open in this court).

In now answering that question, we begin by noting that eight of our sister circuits have concluded that the subject of an arrest warrant, apprehended in a third party's residence, may not invoke Steagald to claim that his Fourth Amendment rights were violated because entry into the residence was not authorized by a search warrant. See United States v. Hollis, 780 F.3d 1064, 1068–69 (11th Cir. 2015); United States v. Jackson, 576 F.3d 465, 468 (7th Cir. 2009); United States v. Kern, 336 F. App'x 296, 297–98 (4th Cir. 2009); United States v.

McCarson, 527 F.3d 170, 172–73 (D.C. Cir. 2008); United States v. Pruitt, 458 F.3d 477, 482 (6th Cir. 2006); United States v. Agnew, 407 F.3d 193, 197 (3d Cir. 2005); United States v. Kaylor, 877 F.2d 658, 663 & n.5 (8th Cir. 1989); United States v. Underwood, 717 F.2d 482, 484 (9th Cir. 1983) (en banc).

The rationale for this conclusion, as we recognized in Snype, is that "(a) Fourth Amendment rights are personal and cannot be asserted vicariously, and (b) requiring police who already hold an arrest warrant for a suspect to obtain a search warrant before they can pursue that suspect in a third party's home would grant the suspect broader rights in the third party's home than he would have in his own home under Payton." 441 F.3d at 133 (collecting cases to date); see United States v. Hollis, 780 F.3d at 1068 (stating that "'person has no greater right of privacy in another's home than in his own,'" and, therefore, "'[i]f an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's [F]ourth [A]mendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another'" (brackets in original) (quoting United States v. Agnew, 407 F.3d at 197)); United States v. Jackson, 576 F.3d at 468 (observing that "Steagald

20

did not hold that the subject of an arrest warrant has a higher expectation of privacy in another person's residence than he does in his own"); United States v. Kern, 336 F. App'x at 298 (rejecting defendant's complaint that entry into premises to effect his arrest violated third-party homeowner's right to be free from unreasonable search because "'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted'" (quoting Rakas v. Illinois, 439 U.S. 128, 133–34 (1978))); United States v. McCarson, 527 F.3d at 172–73 (holding that subject of arrest warrant apprehended in another's home lacks standing to invoke homeowner's Steagald rights "in his defense"); United States v. Pruitt, 458 F.3d at 482 (stating that it would be "illogical" to extend to subject of arrest warrant "greater rights of privacy in the . . . home of his girlfriend than he would have been afforded in his residence of record under Payton"); see also 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment ("LaFave, Search and Seizure") § 11.3(b), at 202 & nn.134–35 (5th ed. 2012).

We here adopt this reasoning as our own and join our sister circuits in concluding that the subject of a valid arrest warrant cannot complain that his Fourth Amendment right to be free from an unreasonable seizure was violated

21

by apprehension in a third party's home, entry to which was not authorized by a search warrant. The arrest-warrant subject has no greater privacy rights in such circumstances than he would have had if the arrest had been made in his own home. Thus, if, at the time of entry, law enforcement officers possessed a valid warrant for the subject's arrest and reason to believe that he was then in the premises entered, the subject of the arrest warrant will not be heard to complain that entry was not authorized by a search warrant. See United States v. Payton, 445 U.S. at 602–03.

In urging otherwise, Bohannon points to the following statement in United States v. Lovelock, 170 F.3d 339 (2d Cir. 1999): "The principle discussed in Payton, allowing officers to enter the residence of the suspect named in the arrest warrant, does not authorize entry into a residence in which the officers do not believe the suspect is residing but believe he is merely visiting." Id. at 344 (citing Steagald v. United States, 451 U.S. at 213–14 & n.7). Bohannon construes this sentence to signal that Steagald, rather than Payton, applies here because it is undisputed that the arrest team believed him to be only a visitor to Dickson's apartment. This misreads the statement by taking it out of context.

22

Defendant Lovelock was the resident of an apartment entered without a search warrant by officers executing an arrest warrant for another person believed to be the resident. This court concluded that when Lovelock was then prosecuted for contraband seized from his apartment, he was not entitled to have that evidence suppressed based on Steagald because, although the entry of his residence was not supported by a search warrant, the officers reasonably believed that the arrest-warrant subject resided in the apartment. In thus holding that "Steagald did not . . . prohibit entry into a residence reasonably believed to belong to the person named in the arrest warrant," id., Lovelock effectively narrowed Steagald's application, even as to third-party residents. It did not extend Steagald—as Bohannon here urges—to afford arrest-warrant subjects greater rights with respect to their apprehensions in third-party residences than Payton recognizes them to have in their own homes. In sum, when the Lovelock language cited by Bohannon is considered in context, it is properly understood to identify reasonable entry expectations as follows: (1) Payton delineates the reasonable expectations of a resident who is the subject of an arrest warrant; (2) Steagald delineates the reasonable expectations of a

23

third-party resident whose home is entered to execute an arrest warrant for a non-resident; but (3) even as to such a third-party resident, <u>Steagald</u> does not prohibit entry into the third party's home without a search warrant where authorities executing an arrest warrant "reasonably believe[ the residence] to belong to the person named in the arrest warrant." <u>United States v. Lovelock</u>, 170 F.3d at 344.[11]

---

[11] In <u>United States v. Vasquez-Algarin</u>, --- F.3d ----, 2016 WL 1730540, at *4 & n.8 (3d Cir. May 2, 2016), the Third Circuit appears to have assumed a <u>Steagald</u> caveat akin to that pronounced in <u>Lovelock</u>, although there concluding that the third-party resident was entitled to suppression of seized evidence because the entering officers' mistaken belief that the home was that of the subject of their arrest warrant was <u>not</u> supported by a reasonable basis. Notably, the Third Circuit did not depart from its earlier holding in <u>United States v. Agnew</u>, 407 F.3d at 197 (rejecting <u>Steagald</u> challenge by arrest-warrant subject apprehended in residence not his own). <u>See</u> <u>supra</u> at 20. Indeed, it distinguished <u>Vasquez-Algarin</u> from <u>Agnew</u> by noting that Vasquez-Algarin was not the subject of the arrest warrant being executed. <u>See</u> <u>United States v. Vasquez-Algarin</u>, 2016 WL 1730540, at *4 n.8.

   In <u>United States v. Glover</u>, 746 F.3d 369 (8th Cir. 2014), and <u>United States v. Gay</u>, 240 F.3d 1222 (10th Cir. 2001), courts heard challenges by arrest-warrant subjects to the reasonable bases for officers' beliefs that certain premises were their residences and that they could be found therein. Because, in each case, the courts concluded that there was such a basis and, thus, no <u>Payton</u> violation, they had no occasion to consider any <u>Steagald</u> claim. Indeed, <u>Glover</u> did not discuss, much less limit or overrule, the Eighth Circuit's holding in <u>United States v. Kaylor</u>, 877 F.2d at 663 & n.5, <u>see</u> <u>supra</u> at 20, that a person arrested in a third-

No more helpful to Bohannon is <u>United States v. Weems</u>, 322 F.3d 18 (1st Cir. 2003), because the First Circuit did not there hold that the subject of an arrest warrant can raise a <u>Steagald</u> challenge. It only assumed such a challenge in concluding that the entry at issue was nevertheless justified by exigent circumstances. <u>See</u> <u>id.</u> at 23 & n.3; <u>see also</u> <u>United States v. Graham</u>, 553 F.3d 6, 14 n.4 (1st Cir. 2009) (stating that <u>Steagald</u> and <u>Weems</u> left open question whether subject of arrest warrant can raise <u>Steagald</u> challenge to entry of third-party residence, and declining to reach issue). Insofar as <u>Weems</u> quotes treatise language cautioning against "render[ing] the <u>Steagald</u> rule a virtual nullity," <u>United States v. Weems</u>, 322 F.3d at 23 n.3 (quoting 5 LaFave, <u>Search and Seizure</u> § 11.3(b), at 143 (3d ed. 1996)), the context for that concern was the possibility that a person arrested at a third-party residence in "the absence of <u>any</u> kind of warrant" would not be heard to complain on the rationale that "the arrest warrant requirement is to protect his own premises, which were not invaded, while the search warrant requirement is to protect only the privacy interests of

party residence could not complain that the residence had been entered without a search warrant because, at the time of entry, officers possessed a valid warrant for his arrest and a reasonable belief of his presence in the premises.

25

the person residing at the place where he was arrested," 5 LaFave, <u>Search and Seizure</u> § 11.3(b), at 143 (3d ed. 1996) (emphasis added); <u>accord</u> 6 LaFave, <u>Search and Seizure</u> § 11.3(b), at 202–03 (5th ed. 2012). Plainly, no such concern arises here. The district court recognized—and the government does not dispute—that Bohannon is entitled to the <u>Payton</u> protections of both a valid arrest warrant and reason to believe that the arrest-warrant subject was then in the entered premises. Further, nothing in this decision renders <u>Steagald</u> a nullity. Its rule fully controls in the very circumstances for which it was pronounced, <u>i.e.</u>, challenges by third-party residents who are prosecuted based on evidence seized from their homes in executing arrest warrants for other persons—subject only to our <u>Lovelock</u> caveat, which we have no occasion to review here. <u>See generally</u> <u>United States v. Taylor</u>, 497 F.3d 673, 679 (D.C. Cir. 2007) (observing that <u>Steagald</u> limits evidence that could be used against third-party resident, not evidence that could be used against subject of arrest warrant).

Insofar as Bohannon highlights the Supreme Court's failure in <u>Steagald</u> to make plain that only <u>Payton</u> protections apply when the subject of an arrest warrant is apprehended in a third party's home, such inaction supports no

inference favorable to Bohannon. As we have already observed, Steagald explicitly addressed only the narrow issue of whether an arrest warrant adequately protects the Fourth Amendment interests of a person not named in the warrant when his home is searched for the warrant's subject.[12] Steagald concluded that it did not because the arrest warrant required "no judicial determination whatsoever regarding the person whose home is to be searched." 451 U.S. at 214 n.7. Further, although Steagald had no occasion to decide under what circumstances the subject of an arrest warrant could challenge his apprehension in a third party's residence, the Supreme Court there reiterated the principle underlying Payton: that "[b]ecause an arrest warrant authorizes the

---

[12] The narrow scope of Steagald also defeats Bohannon's contention that the Supreme Court there "held that in lieu of obtaining a search warrant, the police could arrest the subject of an arrest warrant either before or after he enters the third party's home." Appellee's Br. 29. Insofar as the Court—in rejecting the government's concern that requiring a search warrant to protect a third party's privacy interests would impede law enforcement efforts—observed that there are alternative locations at which law enforcement officers can execute an arrest warrant, see Steagald v. United States, 451 U.S. at 221, that observation, which was not necessary to the Court's decision, did not construe the Fourth Amendment to preclude execution of arrest warrants in third-party residences. See generally Baraket v. Holder, 632 F.3d 56, 59 (2d Cir. 2011) (explaining that what "distinguishes holding from dictum" is "whether resolution of the question is necessary for the decision of the case").

27

police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." Id.

Like our sister circuits, then, we conclude that the subject of an arrest warrant has no greater right to privacy in another person's home than he has in his own and, therefore, that Bohannon's seizure pursuant to a valid arrest warrant, and any search incident thereto, was reasonable if officers had reason to believe that he was present in Dickson's home at the time of entry. See Payton v. New York, 445 U.S. at 603. Bohannon cannot challenge his arrest on the ground that the officers' entry into Dickson's home was not authorized by a search warrant. That Steagald requirement protects a third-party resident from unreasonable intrusions into his home. It is not a constitutional requirement for the reasonable seizure of a person named in a valid arrest warrant.

D.     The Officers Had Reason To Believe that Bohannon Was Within
         Dickson's Apartment on the Morning of December 5, 2013

Having determined that Payton, not Steagald, provides the proper standard for analyzing Bohannon's Fourth Amendment challenge here, we consider de novo whether the record demonstrates the requisite reason to believe

28

that Bohannon was in Dickson's apartment when officers entered those premises on December 5, 2013. We conclude that it does.

At the outset, we note a circuit split as to the showing necessary to satisfy Payton's "reason to believe" standard, with some courts equating reason to believe to probable cause and others holding that reason to believe is a lesser standard. In United States v. Lauter, 57 F.3d 212 (2d Cir. 1995), this court reached the second conclusion. See id. at 215 (rejecting probable cause as "too stringent a test" under Payton, and emphasizing that reasonable belief is "proper" standard (citing, inter alia, United States v. Manley, 632 F.2d at 983 ("[T]he 'reasonable belief' standard . . . may require less justification than the more familiar probable cause test."))); accord United States v. Lovelock, 170 F.3d at 343–44.

The D.C. and Tenth Circuits agree. See United States v. Thomas, 429 F.3d 282, 286 (D.C. Cir. 2005) (citing Lauter, among cases from other sister circuits, in holding that reasonable belief under Payton requires lesser showing than probable cause); Valdez v. McPheters, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999) ("While probable cause itself is a relatively low threshold of proof, it is a higher

standard than reasonable belief . . . ." (internal quotation marks omitted)).[13]  By

contrast, the Third, Fifth, and Ninth Circuits have construed Payton's reasonable-

belief standard as equivalent to probable clause.  See United States v. Vasquez-

Algerin, 2016 WL 1730540, at *10 [3d Cir.]; United States v. Barrera, 464 F.3d 496,

501 & n.5 (5th Cir. 2006); United States v. Gorman, 314 F.3d 1105, 1114–15 (9th

Cir. 2002).  A number of other circuits have elided the issue.  See United States v.

Hamilton, --- F.3d ----, 2016 WL 1592671, at *3 n.5 (1st Cir. Apr. 20, 2016)

(assuming without deciding that "reasonable belief is a lesser standard than

probable cause" and concluding that evidence satisfied probable-cause standard

in any event); United States v. Jackson, 576 F.3d at 469 [7th Cir.] (noting circuit

split, but declining to "decide whether reasonable belief requires probable cause

or something less" because "police had enough evidence to easily satisfy a

probable cause standard" (internal quotation marks omitted)); United States v.

Hardin, 539 F.3d at 416 & n.6 [6th Cir.] (declining to decide whether "lesser

---

[13] A Tenth Circuit panel has questioned whether Valdez should be reconsidered, but declined to pursue that matter because, even assuming Payton's reasonable-belief standard equates to probable cause, the officers there had probable cause to believe the arrestee was home at the time of entry.  See United States v. Denson, 775 F.3d 1214, 1216–17 (10th Cir. 2014).

reasonable-belief standard applies" under <u>Payton</u> because officers' belief did not satisfy even that lower standard, but expressing in <u>dicta</u> view that probable cause is correct standard); <u>see also</u> <u>United States v. Magluta</u>, 44 F.3d 1530, 1534–35 (11th Cir. 1995) (noting that "it is difficult to define the <u>Payton</u> 'reason to believe' standard, or to compare the quantum of proof the standard requires with the proof that probable cause requires").

This panel is, of course, bound by <u>Lauter</u> and, thus, our reason-to-believe review here does not demand probable cause. <u>See</u> <u>United States v. Jass</u>, 569 F.3d 47, 58 (2d Cir. 2009) (explaining that panels are bound by prior decisions of this court unless overruled <u>en banc</u> or by Supreme Court). Notably, Bohannon does not dispute that <u>Lauter</u> controls <u>Payton</u> review in this circuit. <u>See</u> <u>United States v. Quinones</u>, 511 F.3d 289, 311 n.14 (2d Cir. 2007) (holding argument not raised on appeal waived). To the contrary, he cites approvingly to <u>Lauter</u> in urging this panel to conclude, as the district court did, that officers entering Dickson's apartment lacked the requisite reason to believe that Bohannon was then in the premises. We conclude otherwise.

31

At the outset, we observe that it is no more possible to articulate a precise meaning for "reason to believe" as a standard for determining the likelihood of presence at a particular site, than it is to afford precise meanings to standards such as "reasonable suspicion" or "probable cause." See Ornelas v. United States, 517 U.S. 690, 695 (1996) (stating that it is "not possible" to state precise meanings for latter two standards). That is because these standards are all "commonsense, nontechnical conceptions . . . not readily, or even usefully, reduced to a neat set of legal rules." Id. at 695–96 (internal quotation marks omitted) (cautioning that probable cause and reasonable suspicion "are not 'finely-tuned standards,' comparable to the standards of proof beyond a reasonable doubt or . . . by a preponderance of the evidence" (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983))). Rather, they are "fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." Id. at 696 (collecting cases). Thus, the Supreme Court has ruled only that "probable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that [the thing to be seized] will be found in a particular place.'" Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007)

32

(emphasis added) (quoting Illinois v. Gates, 462 U.S. at 238). Meanwhile, reasonable suspicion—a concept generally associated with investigative stops—has been held to require more than a "hunch," Terry v. Ohio, 392 U.S. 1, 27 (1968), and to be satisfied when "specific and articulable facts . . . taken together with rational inferences from those facts," id. at 21, provide detaining officers with a "particularized and objective basis for suspecting legal wrongdoing," United States v. Arvizu, 534 U.S. 266, 273 (2002) (emphasis added) (internal quotation marks omitted); see Richards v. Wisconsin, 520 U.S. 385, 394 (1997) (describing reasonable-suspicion standard as "not high"); United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) (observing that reasonable-suspicion standard "is less than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity 'may be afoot'" (quoting Terry v. Ohio, 392 U.S. at 30)).

Precisely because reasonable suspicion is a concept so closely associated with investigative stops, we do not here assume that it equates exactly to Payton's reason-to-believe standard for determining the likelihood of presence. Nevertheless, we borrow from reasonable-suspicion precedent to conclude that

33

"reason to believe" that the subject of an arrest warrant is within particular premises requires more than a hunch as to presence, but less than a probability. As with reasonable suspicion, reason to believe is not a particularly high standard, but it does require specific and articulable facts that, taken together with rational inferences drawn therefrom, provide a particularized and objective basis for thinking that the arrest-warrant subject may be present within specific premises. See United States v. Spencer, 684 F.2d 220, 223 (2d Cir. 1982) (concluding that facts satisfied Payton where they provided "reasonable basis for the police to believe defendant might be within" (emphasis added)). That standard is satisfied here by the following facts.

Verizon information from December 5, 2013, showed Bohannon's cell phone in frequent use up until 2:38 a.m., after which the phone was inactive through Bohannon's arrest. These two facts, by themselves, provided an articulable, objective basis to suspect that Bohannon had retired for the night soon after—and likely near—his last cell phone use. See Ornelas v. United States, 517 U.S. at 695 (observing that probable cause and reasonable suspicion are concepts "that deal with the factual and practical considerations of everyday

34

life on which reasonable and prudent men, not legal technicians, act" (internal quotation marks omitted)).

Verizon data further showed that, when last used at 2:38 a.m., Bohannon's phone was operating within a cell sector that did not include his 103 Crestview Drive residence. Additionally, visual surveillance of 103 Crestview Drive at approximately 4:00 a.m. on December 5 showed no indication that Bohannon was then at his residence; specifically, no rental cars, such as those Bohannon was known regularly to use based on observations over the course of a two-year investigation, were seen in the vicinity of 103 Crestview Drive. Together, these facts provided an articulable and objective basis to suspect that Bohannon had not retired for the night at his Crestview Drive home but, rather, had done so at the location where he had last used his cell phone.

Verizon data showed that the cell sector where Bohannon had last used his phone included Dickson's 34 Morgan Avenue apartment. As the district court observed, the Verizon data did not—could not—identify Bohannon's precise location within the sector, which included many residences in addition to that at 34 Morgan Avenue. See United States v. Bohannon, 67 F. Supp. 3d at 547. But in

35

reviewing a record for reason to believe presence, a court properly follows the same rule applicable to probable cause determinations, i.e., "we cannot discount facts one by one" as soon as any weakness is identified or contrary explanation hypothesized. United States v. Delossantos, 536 F.3d 155, 161 (2d Cir. 2008) (making observation in context of assessing probable cause); see United States v. Lovelock, 170 F.3d at 344 (rejecting defendant's attempt "to segment, isolate, and minimize each item of evidence that contributed to the existence and reasonableness of the officers' belief"). Thus, Verizon data as to the sector location of Bohannon's phone must be viewed with other evidence that, in total, provided reason to believe that Bohannon "might be within" Dickson's 34 Morgan Avenue apartment on the morning of December 5. United States v. Spencer, 684 F.2d at 223.[14]

---

[14] Insofar as Bohannon dismisses reliance on the noted cell-site data because (1) FBI Agent Zuk was not an expert in the technology, and (2) cell-site data are not a reliable way to identify a phone's location because cell phones do not always connect to the closest cell tower, his arguments merit little discussion. The government acknowledged, and the district court recognized, that Zuk was not a technology expert. Further, Zuk admitted that cell phone data sometimes misidentified locations. See Tr. 28:20–23. Nevertheless, Zuk also testified that in his 16 years as an FBI agent, he had frequently received cell phone data;

36

Not only had Bohannon referenced Morgan Avenue generally in various text messages to a TGO confederate, but also, data from another cell phone that Bohannon had used into November 2013 placed him within 10 meters of 34 Morgan Avenue on several occasions, while physical surveillance following a traffic stop observed Bohannon at the very doorstep of that building. The district court dismissed the first fact for lack of specific reference to 34 Morgan Avenue, the second fact based on evidence of occasional inaccurate GPS placements, and the third fact because the one sighting of Bohannon at 34 Morgan Avenue did not specifically place him in Dickson's apartment. See United States v. Bohannon, 67 F. Supp. 3d at 547–48. We have already observed that such segmentation and

_____

understood that "typically a cell phone will reach out to the tower closest to it," id.; and found the information "generally helpful to find . . . where a person is," id. at 30:9–13. Zuk further testified to law enforcement's specific use of cell-site data reliably to locate individuals in the course of the TGO investigation. See id. at 15:16–23 (explaining that, in course of investigation, TGO task force "had become pretty comfortable" relying on cell-site data in locating Bohannon and his confederates). "[W]hile a reviewing court cannot merely defer to police officers' judgment in assessing reasonable suspicion, the court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene." United States v. Bailey, 743 F.3d at 322 (internal quotation marks omitted). When we do that here, we identify no reason not to consider the cell-site data among the totality of evidence that could support a law enforcement officer's reasonable-belief determination in this case.

37

minimization of individual pieces of evidence fail to conform to the principles of reason-to-believe review, see United States v. Lovelock, 170 F.3d at 344, or even those applicable to probable-cause determinations, see United States v. Delossantos, 536 F.3d at 161. Indeed, the fact that Bohannon was physically seen at 34 Morgan Avenue, even once, corroborated the accuracy of GPS data that placed him within meters of that location on several occasions, which in turn supported an inference that, when he spoke to a TGO confederate about going to Morgan Avenue, he was referencing 34 Morgan. Moreover, such inferences, as well as the likelihood that Bohannon's particular interest in 34 Morgan Avenue was the second floor apartment, are further supported by evidence identifying the lessee of that apartment as Shonsai Dickson, whom law enforcement officers had linked to the TGO as the record lessee of a Trumbull Gardens apartment out of which TGO members sold heroin. Together, this evidence effectively contracted the universe of likely locations for Bohannon's cell phone—and, therefore, Bohannon—on the morning of December 5, 2013, from the full cell phone sector, to the only residence in that sector with which Bohannon was associated.

Further, only two weeks earlier, on November 26, 2013, surveillance officers observed a Toyota Camry registered to Dickson parked outside Bohannon's 103 Crestview Drive home. They saw that same car parked in front of 34 Morgan Avenue on the morning of December 5. While no one ever saw Bohannon himself drive Dickson's car, the November 26 sighting was pertinent in any event insofar as it further linked Bohannon and Dickson, making it likely that it was her apartment that he had visited at 34 Morgan Avenue, and not some other residence within that building. Meanwhile, the December 5 sighting indicated that someone was then within the 34 Morgan Avenue apartment, by contrast to the surveillance observations at 103 Crestview Drive, which indicated that Bohannon was not at home.

In sum, while no individual fact might be sufficient to provide officers with reason to believe that Bohannon might be found in Dickson's apartment on December 5, we conclude that the totality of these facts easily elevated such a suspicion well above the level of a hunch. Viewed in their totality and in a commonsense manner, the record facts provided an articulable, objective reason to believe that Bohannon might then be present in Dickson's apartment. As

already observed, visual surveillance of 103 Crestview Drive together with the pattern of Bohannon's cell phone activity and the cell-sector location of the phone at its last 2:38 a.m. use provided reason to believe that Bohannon was not at home. Further, facts linking Dickson to the TGO and Bohannon to Dickson, and, specifically, to her 34 Morgan Avenue apartment, the only location within the relevant cell sector to have figured in the TGO investigation, provided articulable, objective reason to believe that where Bohannon was within the relevant cell sector was in Dickson's apartment.

Accordingly, because the law enforcement officers who entered Dickson's apartment on December 5, 2013, possessed both a valid warrant for Bohannon's arrest and reason to believe that he was then in those premises, Bohannon fails to demonstrate that his arrest violated the Fourth Amendment. The order suppressing any evidence seized incident to arrest on the ground that officers lacked the requisite reasonable belief of presence necessary to Bohannon's lawful arrest is, therefore, vacated.[15]

---

[15] The government further argues that because Bohannon's arrest was lawful, the contemporaneous search of his pants pockets and seizure of money therefrom, as

## III.    Conclusion

To summarize, we conclude as follows:

1.    Whether the subject of an arrest warrant is apprehended in his own home or a third-party residence where he is a guest, his Fourth Amendment privacy rights with respect to entry of either premises are those stated in Payton v. New York, 445 U.S. 573, i.e., at the time of entry, arresting officers must possess (a) a valid arrest warrant for the subject and (b) reason to believe that the subject is then in the premises.  The third-party resident's Fourth Amendment right in such circumstances to have the entry into his home authorized by a search warrant, see Steagald v. United States, 451 U.S. 204, does not extend to the subject of the arrest warrant.

---

well as the contemporaneous search under Dickson's bed and later seizure of drugs seen thereunder, were also lawful.  See Maryland v. Buie, 494 U.S. 325, 327 (1990) (holding that officers may conduct protective sweep in conjunction with lawful in-home arrest); United States v. Robinson, 414 U.S. 218, 224 (1973) (holding that officers may conduct search incident to lawful arrest of area within arrestee's immediate control).  The district court did not itself consider whether these seizures were properly deemed "incident" to a lawful arrest, having mistakenly concluded that Payton error rendered Bohannon's arrest (and any search incident thereto) unlawful.  Thus, we leave that question for its consideration on remand.

2.     The totality of circumstances known to law enforcement authorities at the time they entered third party Dickson's residence to execute a valid warrant for Bohannon's arrest supported reason to believe that Bohannon was then in those premises.

Accordingly, the district court's suppression order is hereby VACATED to the extent it concluded that the entry of Dickson's apartment violated Bohannon's Fourth Amendment rights, and the case is REMANDED for further proceedings consistent with this opinion.