19-3952 (L)
United States of America v. Latique Johnson

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 22nd day of June, two thousand twenty one.

Present:     ROSEMARY S. POOLER,
             WILLIAM J. NARDINI,
                      *Circuit Judges*,
             LEWIS A. KAPLAN,
                      *District Judge*.[1]

---

UNITED STATES OF AMERICA,

        *Appellee*,

    v.                                                          19-3952-cr
                                                                          19-4357-cr

LATIQUE JOHNSON, DONNELL MURRAY, AKA DON P.,

        *Defendants-Appellants*.[2]

---

Appearing for Appellants:     Andrew Levchuk, Amherst, MA, *for Defendant-Appellant Latique Johnson*.

                              Bruce R. Bryan, Manlius, N.Y., *for Defendant-Appellant Donnell Murray*.

---

[1] Judge Lewis A. Kaplan, District Judge, United States District Court for the Southern District of New York, sitting by designation.

[2] The Clerk of Court is directed to amend the caption as above.

Appearing for Appellee:     Allison Nichols, Assistant United States Attorney (Andrew K. Chan, Jessica Feinstein, Karl Metzner, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Gardephe, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Latique Johnson and Donnell Murray (collectively, "Appellants") appeal from judgments of conviction entered on December 23, 2019 and November 15, 2019, respectively, in the United States District Court for the Southern District of New York (Gardephe, *J.*), following a jury trial. Together, they were convicted of racketeering conspiracy; assault and attempted murder or aiding and abetting the same in aid of racketeering; conspiracy to distribute cocaine, crack cocaine, and heroin; and use and possession of a firearm in connection with a drug trafficking crime. The district court principally sentenced Johnson to 30 years' imprisonment, and Murray to 235 months' imprisonment. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Johnson and Murray's convictions stem from their association with a subset of the nationwide gang commonly known as the Bloods. While incarcerated, Johnson founded the unit of the Bloods at issue here, the Blood Hound Brims ("BHB"), in which Murray held various positions. Appellants each present multiple arguments on appeal. For the reasons below, we affirm both judgments.

### A. Johnson

Johnson first argues that the evidence supporting his conviction under Count Three, attempted murder in aid of racketeering, was insufficient. Johnson highlights the purportedly contradictory testimony of two cooperating witnesses who were present at the drive-by shooting underlying the charge. This argument fails. The discrepancies Johnson points to are minor and do not undermine the critical facts established at trial—that Johnson commanded another member of BHB to shoot at two nearby members of a rival gang with which BHB was feuding. To the extent Johnson questions the witnesses' credibility, "[i]t is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory, and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotation marks omitted). "[A]ny rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. Chow*, 993 F.3d 125, 135-36 (2d Cir. 2021) (italics and internal quotation marks omitted), so we must uphold the conviction.

Next, Johnson argues that the district court erred in admitting expert ballistics testimony through government witness Detective Jonathan Fox of the New York Police Department. He

2

contends in particular that toolmark identification, a methodology used to determine whether pieces of ballistics evidence, such as bullets and casings, were discharged from a given firearm, is insufficiently reliable because there is little or no scientific evidence establishing that toolmarks are unique to each firearm. Federal Rule of Evidence 702 and the *Daubert* factors do not create "a definitive checklist or test" and allow for the admission of "specialized knowledge" outside of purely scientific or technical fields. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotation marks omitted). Here, the district court conducted an extensive *Daubert* hearing, carefully considered Johnson's contentions as well as Detective Fox's testimony, and rendered a thorough, reasoned opinion that took full account of Johnson's contentions.

We review the admission of expert testimony for abuse of discretion. *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015). We previously have affirmed the admission of toolmark identification expert testimony even where the trial court did not conduct an extensive *Daubert* hearing, as the court did here. *See United States v. Williams*, 506 F.3d 151, 160-61 (2d Cir. 2007). In the circumstances, we doubt that admission of Fox's testimony was an abuse of discretion. In any case, however, any error certainly was harmless. Counsel explored the alleged flaws in Fox's opinion in a substantial cross-examination, and the jury was able to draw its own conclusions. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). At least equally important, multiple witnesses testified that Johnson mimicked shooting the victims, obtained an assault rifle shortly before the shooting, placed Johnson at the shooting and identified him as the shooter, and provided evidence of the motive, i.e., an ongoing rivalry between BHB and another gang.

The district court also did not err in denying Johnson's motion for a new trial. As discussed, Fox's testimony was properly admitted. As for Johnson's conviction on Count Four, conspiracy to distribute controlled substances, "[i]t is well settled that individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members." *United States v. Johnson*, 633 F.3d 116, 118 (2d Cir. 2011). Ample evidence supported the finding that Johnson, the leader and founder of BHB, was responsible for 5 kilograms or more of cocaine, 280 grams or more of cocaine base, 1 kilogram or more of heroin, and any quantity of marijuana. Indeed, the Elmira portion of BHB's drug operation alone accounted for one kilogram of cocaine every two to three days, half of which was converted to crack cocaine, and 80 grams of heroin on each restock trip to New York City. To the extent Johnson again raises witness credibility issues regarding his Count Four conviction, the jury has already resolved this question, and we may not disturb its judgment.

Johnson also argues that his sentence was unreasonable. "We review a sentence on appeal for procedural and substantive reasonableness." *United States v. Seabrook*, 968 F.3d 224, 232 (2d Cir. 2020). "A district court commits procedural error when it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Alcius*, 952 F.3d 83, 87 (2d Cir. 2020) (internal quotation marks omitted). "Our review of a sentence for

substantive reasonableness is particularly deferential, and we will set aside only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (citation, alteration, and internal quotation marks omitted).

Johnson concedes that he received a below-Guidelines sentence and does not present grounds for finding procedural error. Instead, Johnson argues that his difficult childhood, along with exemplary behavior during incarceration, merited a shorter term of imprisonment. However, the district court took all of this, along with the other Section 3553(a) factors, into consideration at sentencing. Weighing against Johnson were several other factors, including the violent nature of his crimes, his founding and leadership role within BHB, and the high risk of recidivism, given that Johnson founded BHB while he was incarcerated for other crimes. Accordingly, we cannot say the court's 30-year sentence is shockingly high.

## B. Murray

Murray argues that the evidence at trial was insufficient to support his convictions for racketeering conspiracy (Count One) and assault and attempted murder in aid of racketeering (Count Two). There was ample evidence to support the jury's finding that Murray participated in a pattern of racketeering based on the narcotics trafficking crimes alone. *See United States v. Zemlyanksy*, 908 F.3d 1, 11 (2d Cir. 2018) (explaining that racketeering conspiracy requires proof of, inter alia, "two or more predicate acts of racketeering"). For example, witnesses testified that Murray purchased 10 grams of heroin to resell, that Murray had stated he was selling crack near 241st Street and White Plains Road, an area BHB members frequented, and that Murray encouraged BHB members to "come to the hounds" if they needed drug or firearm supplies. Murray App'x at 675-76.

Murray also argues that the verdict form was deficient because it did not specify that the jury must find at least two predicate acts of narcotics trafficking to consider him guilty of racketeering conspiracy. But we have rejected a requirement that juries answer "special interrogatories as to which specific predicate acts each defendant agreed would be committed." *United States v. Applins*, 637 F.3d 59, 82-83 (2d Cir. 2011). In any event, the form specifies that that a "pattern" of narcotics activity was required, Murray App'x at 866, and the court instructed the jury that a pattern consists of "[t]wo or more acts and offenses" within a "category" of crime, Murray App'x at 818. Because "we presume that a jury follows the instructions of the court," *United States v. Batista*, 684 F.3d 333, 342 (2d Cir. 2012), and Murray does not present more than speculation on what the jury might have considered sufficient, we affirm this conviction.

Sufficient evidence also supports Murray's conviction under Count Two. At trial, the government presented evidence suggesting Murray aided and abetted the shooting underlying Count Two of the indictment. "To prove that the defendant acted with . . . specific intent [to aid and abet a crime], the government must show that he knew of the crime; but it need not show that he knew all the details of the crime, so long as the evidence shows that he joined the venture, that he shared in it, and that his efforts contributed towards its success." *United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006) (citations, brackets, and internal quotation marks omitted). It is axiomatic that "most evidence of intent is circumstantial." *United States v. Salameh*, 152 F.3d

88, 143 (2d Cir. 1998). Enough circumstantial evidence existed for a rational trier of fact to conclude that Murray knowingly drove Johnson to the restaurant to aid and abet an assault.

Furthermore, the district court did not constructively amend the crime charged in Count Two by instructing the jury that the named defendants could be found guilty whether they committed the act or aided and abetted its commission. "The federal aiding and abetting statute, 18 U.S.C. § 2, does not penalize conduct apart from the substantive crime with which it is coupled." *United States v. Mucciante*, 21 F.3d 1228, 1234 (2d Cir. 1994). Therefore, we affirm the conviction on Count Two.

The district court also did not err in denying Murray's motion to suppress evidence obtained during a search of his apartment pursuant to an arrest warrant. Because Murray's driver's license and statements during a previous arrest indicated that the apartment at issue was his residence, the officers had "reason to believe" Murray lived there, and, accordingly, authority to enter. *United States v. Bohannon*, 824 F.3d 242, 249 (2d Cir. 2016). A small scale, typically used to weigh drugs, and small amounts of drugs were in plain view. *See United States v. Babilonia*, 854 F.3d 163, 179-80 (2d Cir. 2017) (explaining the "plain view" exception to the Fourth Amendment's protections). These items supported a search warrant for the apartment, which the officers subsequently obtained, thereby triggering the inevitable discovery doctrine. *See United States v. Vilar*, 729 F.3d 62, 84 (2d Cir. 2013) ("[E]vidence obtained during the course of an unreasonable search and seizure should not be excluded if the government can prove that the evidence would have been obtained inevitably without the constitutional violation." (internal quotation marks omitted)). We affirm the district court's denial of Murray's motion to suppress.

Nor did the district court improperly interfere in Murray's plea discussions. "[T]he court must not participate in [any plea] discussions . . . because such discussion inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty." *United States v. Paul*, 634 F.3d 668, 671 (2d Cir. 2011) (brackets and internal quotation marks omitted) (citing Fed. R. Crim. P. 11(c)(1)). The record indicates that the district court simply confirmed that Murray had rejected two prior plea offers. The conversation contained no persuasive or coercive language at all. Therefore, we find no violation of Rule 11(c)(1).

Additionally, the district court did not exceed its discretion in denying Murray's request for new counsel months before trial. We consider "(1) whether defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001) (internal quotation marks omitted). The record does not suggest that counsel's relationship with Murray had devolved into a "total lack of communication." *John Doe No. 1*, 272 F.3d at 122 (internal quotation marks omitted). Indeed, Murray initially acquiesced to proceeding with trial counsel and requested new counsel only when the court explained that finding new counsel would become more difficult closer to the trial date. Due to circumstances outside of the district court's control, the trial date was postponed, but finding alternate counsel was still not feasible. The court's decision to proceed with Murray's counsel in February 2019

did not exceed the bounds of its "great deal of latitude in scheduling trials," as a court "need not grant a continuance so that a defendant may be represented by counsel of his choosing, where such a continuance would cause significant delay." *United States v. Griffiths*, 750 F.3d 237, 241-42 (2d Cir. 2014) (internal quotation marks omitted).

Finally, Murray's sentence was not substantively unreasonable. The court properly analyzed the Section 3553(a) factors and sentenced Murray to a term of imprisonment within the applicable Guidelines range. Given Murray's participation and leadership role in BHB and its violent crimes, including being a getaway driver for a shooting at a restaurant, a 235-month imprisonment was not "shockingly high." *Muzio*, 966 F.3d at 64. Accordingly, we affirm Murray's sentence.

We decline to reach the merits of Murray's arguments regarding purportedly ineffective assistance of counsel. "[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective[]assistance." *United States v. Khedr*, 343 F.3d 96, 100 (internal quotation marks omitted). We have declined to hear ineffective assistance claims on direct appeal where, as here, the district court has not had an opportunity to "develop the facts necessary to determining the adequacy of representation during an entire trial." *Id.* (internal quotation marks omitted); *see generally United States v. Johnson*, 452 F. Supp. 3d 36 (S.D.N.Y. 2019) (no mention of an ineffective assistance claim).

## C. Conclusion

Appellants also rely on *United States v. Davis* as grounds for vacatur. 139 S. Ct. 2319 (2019). To the extent *Davis* invalidated portions of the verdict, the district court already granted the necessary relief during post-trial motion practice. *See Johnson*, 452 F. Supp. 3d at 73, 77-78. Therefore, no unresolved *Davis*-related issues remain on appeal.

We have considered the remainder of Appellants' arguments and find them to be without merit. Accordingly, the judgments of the district court hereby are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk